## WEAVER v. PURYEAR & WILLIAMSON.

1. An action may be commenced by attachment, to recover for a breach of warranty, of the soundness of a slave.

Error to the County Court of Dallas.

SUIT commenced by attachment by the plaintiff in error.

The two first counts of the declaration, are upon a warranty of soundness of a slave, sold by the defendants to the plaintiff, at the price of seven hundred dollars, to which are added the money counts. The defendants refused to plead to the declaration, and suggested to the court that the first and second counts of the declaration, are not admissible under the attachment sued out in this case, for a money demand, and moved the court to strike therefrom the declaration, which motion was granted by the court, and the plaintiff excepted.

The defendants then pleaded to the common counts, and upon the trial the plaintiff offered in evidence; as the foundation of his action, the following instrument:

"We have this day bargained and sold, unto Philip J. Weaver, a negro man named Green, whom we warrant to be sound and healthy in every respect, and title good, for the

sum of seven hundred dollars." And also offered to prove, that the slave at the time of the sale, was unsound and of no value. This testimony, on motion of the defendant, was rejected by the court, and the plaintiff excepted.

BOLLING, for plaintiff in error.

EDWARDS, contra.

ORMOND, J.—The question presented by the record is, whether an attachment will lie upon a breach of warranty of the soundness of a slave.

By the custom of London, which is the original of the statute regulations upon this subject, foreign attachment would not lie, but in those cases where debt, or indebitatus assumpsit could be maintained.

Our statute uses the terms, "debt or demand," and requires the plaintiff, or his agent, "to swear to the amount of the sum due," and as this could not be done, where the damages were uncertain, it would seem to follow, that an attachment would not lie. We do not think however, it was the intention of the legislature, to confine this remedy to those cases where a debt, in the technical sense of the term existed, as on that supposition there was no necessity for the introduction of the term "demand," into the act. The design of the attachment law was, to compel an appearance, in those cases where personal service of the process could not be effected, and we think the reasonable, and just interpretation of the act is, that this remedy was given in all cases of contract, when by the terms of the contract, or by the law acting upon it, the sum due, or the damages to which the party was entitled upon a breach of the contract, was ascertained. If this construction is not put upon the law, the party in such a case as this, will be driven into chancery, when adequate redress could be more speedily obtained in a court of law.

In this case, the damage for the breach of warranty, is the value of the slave at the time of the warranty. [Willis & Robertson v. Dudley, at this term.] This is a sum capable of ascertainment, and of which the plaintiff might make affidavit. It is within the very letter of the statute, a "demand," and as it arises out of the contract of the parties, and the

measure of the damages is ascertained by the law of the contract, it comes fully within the definition as here given.

A similar view is taken of the attachment law of Pennsylvania, by Judge Washington, in Fisher v. Consequa, 2 W. C. C. Rep. 382, which like ours, speaks of " debts and demands." In that case, the defendant bound himself to deliver to the plaintiff teas of a particular quality, suited to a particular market, and on failure to do so, to pay the difference between teas of such quality, and such as should be delivered. Such teas as the contract called for were not delivered, and the plaintiff swore that the difference amounted to $4500; it was held that the attachment would lie. So also, in Hunt v. Norris, 4 Martin, 517, it was held, that the master, and owners of a vessel, were liable to an attachment at the suit of the shipper for goods lost through neglect, upon the ground, that the obligation arose out of a contract of bailment. And in Clarke v. Wilson, 3 Wash. C. C. R., that it would not lie where the damages were unliquidated, and the contract afforded no rule for ascertaining them.

These views conduct us to the conclusion, that an attachment will lie in such a case as the present. Let the judgment be reversed, and the cause remanded.