## ROBY *vs.* LABUZAN.

1. The process of garnishment relates only to the time of its service; and if there is no indebtedness at that time from the garnishee to the defendant in the attachment, the plaintiff is not entitled to a judgment, although it may appear that between the time of service and answer the garnishee became indebted, and paid the debt to the defendant in attachment. .

2. The legal rights only of the defendant in attachment can be reached by process of garnishment, that is, such debts as he can himself enforce by suit at common law, and also, such property as would be liable to seizure and sale under execution against him, if the sheriff could get possession of it.

3. Before the service of the garnishment, the garnishee had shipped to New Orleans a lot of cotton belonging to the defendant in attachment, on which he had made a large advance of money, to be reimbursed from the proceeds of the cotton when sold. After the service of the garnishment, *but before answer*, the cotton was sold, and the proceeds were paid to the garnishee, who retained the amount due him for advances, and paid the surplus to one claiming to be the transferree of the defendant in attachment. *Held*, That the plaintiff was not entitled to judgment against the garnishee, on the above state of facts.

ERROR to the Circuit Court of Mobile.

Tried before the Hon L. GIBBONS.

This suit was commenced by attachment by the plaintiff in error against Aaron H. Jones, and Labuzan was summoned as a garnishee. He appeared and answered, denying generally that he was indebted to Jones, or that he had any effects of his in his possession, and then stated, in substance, the following facts: That in February or March, 1851, he shipped, at the request of Jones, to the firm of Buchanan, Carroll & Co., of New Orleans, a quantity of cotton, on which he had made a large advance of money, to be reimbursed from the proceeds of the cotton; that the cotton, in pursuance of the instructions of Jones, was delivered to him by the late firm of Curry, Desmukes & Co., of Mobile, who were the agents of Jones in making the shipment; and that he, the garnishee, paid the amount advanced, partly to Curry, Desmukes & Co., and partly to Jones himself; that said shipment was made before the service of garnishment, and at the date of the service had not been sold by Buchanan, Carroll & Co., nor had the advances thereon made by the garnishee been paid;

that Jones was a member of the firm of Curry, Desmukes & Co., but the cotton belonged to him individually; that at the time the shipment of the cotton was made, Jones directed the garnishee to be governed by the instructions of Curry, Desmukes & Co. respecting the sale of the cotton or its proceeds, and to pay to Curry, Desmukes & Co., as his agents, all further advances on said cotton, or the proceeds thereof. He further answered, that after the service of the garnishment, the cotton was sold in New Orleans, and the proceeds of sale remitted to him; and after deducting therefrom the amount of the advances, there remained in his hands thirteen hundred and eleven $\frac{48}{100}$ dollars, which balance he had paid over to Edward Curry, a partner of the late firm of Curry, Desmukes & Co., under the directions given by Jones to the garnishee, and on the claim of said Curry to be entitled to the same, as a partner of the late firm of Curry, Desmukes & Co., on the ground that such balance had been transferred by Jones to the firm. But the payment to Curry was made with the understanding, that it should be refunded to the garnishee, if the funds were adjudged liable to the attachment. That after the shipment of the cotton, the firm of Curry, Desmukes & Co. had been dissolved, and Curry was charged with the settlement of its affairs; and that he had been notified that Jones was indebted to the firm in about the sum of two thousand dollars.

Upon this answer, a notice was issued to Curry, requiring him to appear and contest his claim to the money and the validity of the transfer by Jones to Curry, Desmukes & Co. Curry and Desmukes appeared, and a question arose, how the issue should be made up. The plaintiff in the attachment contended, that Curry & Desmukes should allege the validity of the transfer, that he might controvert it; but the court ruled, that the plaintiff should allege that the funds were liable to the attachment; in response to which, Curry & Desmukes might set out their transfer, and aver its validity. And so the issue was made up; but the plaintiff excepted. A trial was had, and several objections were taken to the ruling of the court, but it is unnecessary, from the view taken of the case by the court, to state them.

GEO. N. STEWART and PERCY WALKER, for plaintiff in error:

A surplus, after satisfying a previous claim, may be attached. 15 Mass. 490; 1 Pick. 400; 6 Ala. 160.

The attachment should reach all property in the hands of a garnishee, as well at time of answer as at time of summons of garnishee. Serg. on At. 101—88—91.

The consignee is entitled, always, to retain his own debt, and is liable only for the surplus, as a garnishee. Serg. on At. 82—3—93; 16 Mass. 320; 8 Pick. 280.

It is no objection that the amount is not ascertained. The court will, if necessary, stay the proceedings till sales made, and amount ascertained remaining in garnishee's hands. 16 Mass. 275—8—80; 8 Pick. 280; 3 Murphy, 256; 20 Vermont, 382; 14 Mass. 272.

Money growing due on a contract may be attached, and proceedings will be stayed till it falls due. Serg. on At. 65—94.

That the goods are out of the State, makes no difference, if under the control of the garnishee. 6 Pick. 358.

In this respect, the liability of the garnishee would be like that of a defendant in trover. 3 Murphy, 256.

It is not indispensable that there be a strictly technical cause of action at the time of the commencement of the garnishment against the garnishee. It is sufficient if he have goods in his possession. 18 Vermont, 590.

WM. G. JONES, contra:

1. The charge of the court was correct, and the charge asked by the plaintiff was properly refused. The garnishment relates to the present time: that is, to the time of its service. It does not affect funds which might come to the garnishee's hands after the service of garnishment, though before answer. The Branch Bank at Mobile v. Poe, 1 Ala. 396; Hazzard v. Franklin, 2 Ala. 349—351; Payne v. The Mayor and Aldermen of Mobile, 4 Ala. 333. There was no indebtedness of Labuzan to Jones at the time of the service of garnishment. It was then the other way, for Jones was then largely indebted to Labuzan. Whether any funds of Jones's would ever come to Labuzan's hands, or whether he would ever be indebted to Jones, was a mere contingency, or

a bare possibility, depending entirely on whether the cotton would sell for more than enough to reimburse the advances or not; or, if sold for more, whether the surplus should come to Labuzan's hands. Such a contingent or possible future debt is not reached by garnishment. 4 Ala. 334.

2. It is insisted that there was no error in the decisions of the court; but if there was any error, it was one by which the plaintiff could not have been prejudiced, and, therefore, this court will not reverse the judgment, even if there were error. Smith v. Martin's Exr. 18 Ala. 819—821; Smith & Gary v. Aubrey, 19 Ala. 63—66; Shehan v. Hampton, 8 Ala. 942—947, and cases there cited. This plainly appears from the record. The plaintiff had no right to call in Curry and Desmukes on Labuzan's answer. The statute (Clay's Dig. 63, §§ 39 and 50,) applies only to cases where the garnishee admits an indebtedness at the time of service, and continuing up to the time of answering, but the right to which he has been notified has been transferred to another. There must be a fund in the garnishee's hands. If he has paid it over to the transferree, whether rightfully or wrongfully, it cannot be gotten back from the transferree by this mode of proceeding. Here the garnishee denied any indebtedness, and stated that he had paid over to Curry and Desmukes the proceeds which afterwards came to his hands. It is obvious the plaintiff can never get a judgment.

DARGAN, C. J.—The decisions of this court have settled the question, that the process of garnishment relates only to the time of its service; and if there is no indebtedness at that time from the garnishee to the defendant in the attachment, the plaintiff will not be entitled to judgment, although it may appear, that, between the time of service and answer, the garnishee became indebted, and paid the debt to the defendant in attachment. The Branch Bank at Mobile v. Poe, 1 Ala. 396; Hazard, admr. v. Franklin, 2 Ala. 349; Payne v. The Mayor and Aldermen of the City of Mobile, 4 Ala. 333. In the case cited from 2 Ala., it was said, that even if the garnishee held notes on others belonging to the defendant at the time of the service of the writ, and which were subsequently paid to him, still, as there was no actual indebtedness

from the garnishee at the time the garnishment was served, the plaintiff was not entitled to recover.   Hazard v. Franklin, *supra*.   It is, however, urged, that these decisions take too narrow and restricted a view of this remedy, and are contrary to the decisions of the other States of the Union, as well as the decisions of England, upon process of this kind, arising out of the custom of London.

I admit that the courts of Massachusetts, Pennsylvania, and some other States, hold a different rule, and, in England, the rule seems to be, that the garnishee may answer or plead immediately, if he has no funds, and thus discharge himself; but if he does not, and waits until he becomes indebted, or has property in his hands belonging to the defendant, he must then answer as to such property or indebtedness: the issue relating to the time of the answer, and not to the time of the service of the process.   3 East, 374.

I confess, that if the question was an open one, I should be disposed to hold in conformity with the English decisions, which have been adopted by most of our sister States in which the question has arisen.   But our predecessors have settled the rule otherwise; it has become well known, and has constantly been acted upon, and we must yield to it.

But it is contended that the garnishee, though not strictly indebted at the time of the service of the writ, nevertheless had property in his possession, to-wit: the cotton, and that he is liable for the value thereof, over and above the advances made by him, to Jones, the defendant in attachment.   To this argument, I cannot assent.   The process of garnishment can reach only the legal rights of the defendant.   What I mean by legal rights, is, that it reaches such debts as can be enforced by the defendant in the attachment by suit at common law, and also, such property as would be liable to seizure and sale, if the sheriff could get possession of it.

In the case of Harrell v. Whitman, 19 Ala. 135, we held, that the process of garnishment must be considered as a legal, and not as an equitable proceeding; and therefore, the defendant's right to the fund or property sought to be condemned, must be a legal, as contradistinguished from an equitable one; and in the course of that opinion, it was said, "If we ever depart from the plain rule, that an attachment and gar-

nishment can operate only on the legal rights of the defend-
ant, there would be no stopping point, and we should have
to go the full length, that equitable rights might be attached
by garnishment in a suit at law; and thus a court of law
would become invested with cognizance of equitable rights,
and bound to ascertain and condemn them, however difficult
the task might be, or however incompetent the powers of the
court for this purpose." That decision is well sustained by
the previous adjudications of this court, and we feel no incli-
nation to depart from it.

It may, however, be said, that the right of Jones to the
surplus, after paying the advances, is a legal, and not an
equitable right. I admit it is so, after the money came into
the hands of Labuzan, the garnishee; but, considering the
cotton as property at the time of the garnishment, and we
are bound so to consider it, it is very clear that it could not
have been levied on in the possession of the garnishee, who
had made advances upon it. The defendant in the attachment
had parted with the possession and control of the cotton, and
was only entitled, after the sale, to the surplus, if any, after
paying the amount advanced to him. In that condition, the
cotton was not subject to execution at law, and I do not see
how it could be liable to attachment. An attachment can
be levied only on such property as is the subject of levy and
sale under execution; and if one be garnisheed on the ground
that he has property of the defendant's in his possession, or
under his control, it must be shown that the property is such
as is the subject of levy and sale under execution. If, then,
we consider the cotton as property in the possession of Labu-
zan, it could not be sold under legal process against the
defendant, and, consequently, it cannot be reached by process
of garnishment; and if we consider the right of Jones as the
mere right to demand the surplus of the money it might
bring, after the payment of the advances made by Labuzan,
then the decisions we have referred to furnish the decisive
answer, that at the time of the service of the writ, there was
no debt due from the garnishee to the defendant in the
attachment.

It may be, that our decisions have so restricted the opera-
tion of this process as to lose some of the benefits that credi-

tors might have derived from it; but we deem it best to adhere to them, and let the legislature extend the remedy.

As we come to the conclusion that the plaintiff is not entitled to a judgment against the garnishee, even admitting that he had paid over the money to Jones himself, or to Curry, Desmukes & Co., as the agents of Jones, it is unnecessary to examine the questions growing out of the contest between the plaintiff and Curry, Desmukes & Co., who claimed to be the transferrees of the money paid by Labuzan to them.

Let the judgment be affirmed.