Bozeman v. Rose.

## BOZEMAN *vs.* ROSE.

[ACTION FOR BREACH OF SPECIAL CONTRACT FOR DELIVERY OF COTTON.]

1. *Measure of damages.*—The measure of damages for the breach of a special contract, by which plaintiff loaned to defendant a specified quantity of cotton, of a designated quality, and defendant promised, in consideration thereof, to deliver to plaintiff, on a certain future day, the same quantity of cotton of like quantity, is the value of the cotton on the specified day of performance; and this principle is not affected by the fact that no place of delivery is named in the contract, nor by the further fact that the cotton is to be delivered in kind.

2. *Special affidavit in attachment cases ; when necessary.*—When an attachment is sued out in an action to recover damages for the breach of a special contract, the measure of which damages is fixed by law, and can be "certainly ascertained" by a pecuniary standard, no special affidavit is necessary, under section 2503 of the Code.

3. *Same; sufficiency of.*—A special affidavit in an attachment case, (Code, § 2503,) being made for the single purpose of enabling the judge who grants the writ "to determine the amount for which a levy must be made", does not perform the office of any part of the pleadings, and is not to be construed by the strict rules applicable to pleadings; its definiteness and sufficiency rests in the discretion of the judge, and cannot be tested by plea in abatement, nor be a subject of revision on appeal.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. F. BUGBEE.

THIS action was brought by Howell Rose, against Nathan and David W. Bozeman, and was commenced by original attachment, issued on the 4th August, 1865. The attach-

Bozeman v. Bose.

ment was sued out by Thomas Williams, as the agent of the plaintiff, on the ground that one of the defendants was about to remove beyond the limits of the State; and he also made a special affidavit before Judge BUGBEE, at the same time, in which he thus stated the cause of action: "On the 3d day of June, 1863, Howell Rose and Nathan and David W. Bozeman contracted as follows: Said Rose loaned to the said Bozemans forty-eight thousand eight hundred and forty-six pounds of ginned and packed cotton, classified as 'middling'; and the said Bozemans then and there contracted and agreed to deliver to the said Rose the same amount of the same classification of cotton on the 1st day of January, 1865; and although they have the cotton on hand, with which to pay said debt, they neglected and refused, and still do, to deliver said cotton." The circuit judge doubting the authority of said Williams, as agent, to sign plaintiff's name to the statutory bond, the latter promised that he would procure another bond to be signed by plaintiff himself; and he accordingly obtained such bond, three or four days afterwards, and, at the same time, procured plaintiff to make two affidavits, similar to the affidavits already made by said agent; which bond and affidavits were ante-dated, so as to correspond with the attachment. In the special affidavit thus made by plaintiff, the cause of action was stated in the same words as in the special affidavit of said agent; and in the other affidavit, stating the ground on which the attachment was sued out, it was averred that David W. Bozeman had left the State.

At the January term, 1866, which was the return term of the attachment, the cause was submitted to the presiding judge, on certain motions, which are thus stated in the bill of exceptions; "The counsel for the parties in this case agreed, that the foregoing are the facts of the case; that the cotton contract set forth in the affidavit is the demand for which the attachment was sued out; that if, on the foregoing facts, the defendants are by law entitled to have said attachment quashed on motion, or abated on any plea that could be framed on the foregoing facts, such motion to quash shall be deemed and taken to be duly made, and such plea or pleas in abatement to be duly framed,

verified, and filed; that if, on such motion or pleas, and on the foregoing facts, the law is in favor of the defendants, judgment is to be rendered by the court in favor of the defendants, and said attachment to be quashed, dismissed, or abated; and if otherwise, then judgment is to be rendered overruling such motion, plea, or pleas." It was further agreed, that the party against whom the judge decided the motions should have a right to revise his decision by appeal to this court. On these facts, the circuit court decided the motions adversely to the defendants; to which they duly excepted, and which they now assign as error.

GOLDTHWAITE, RICE & SEMPLE, for appellants.
ELMORE, KEYES & GUNTER, and THOS. WILLIAMS, *contra*.

JUDGE, J.—Section 2503 of the Code is as follows: "Attachments may issue: 1. To enforce the collection of a debt, whether it be due or not at the time the attachment is taken out. 2. For any moneyed demand, the amount of which can be certainly ascertained. 3. To recover damages for a breach of contract, when the damages are not certain or liquidated. 4. When the action sounds in damages merely."

If the attachment be issued "to recover damages for a breach of contract, when the damages are not certain or liquidated", or in an "action sounding in damages merely", it must be issued by a circuit judge, or chancellor; and in every such case, the judge or chancellor, before issuing it, must require the plaintiff, his agent, or attorney, in addition to the affidavit and bond required in other cases, to make affidavit in writing of the special facts and circumstances, so as to enable him to determine the amount for which a levy must be made.—Code, § 2508. In all other cases, the attachment may be issued without such special affidavit.

In the case before us, a special affidavit was made; and in the court below, by agreement between the parties, a plea in abatement was considered as filed in due form and substance, to test its sufficiency. The affidavit describes the contract on which the suit is founded, as being in sub-

stance as follows :   In June, 1863, the plaintiff "loaned" to the defendants a specified quantity and quality of ginned and packed cotton ; in consideration of which, the defendants agreed to deliver to the plaintiff the same quantity and quality of cotton, on the first day of January, 1865.   It is averred in the affidavit, that the defendants neglected and refused to deliver the cotton ; but neither the place of delivery, nor the price of the cotton, is stated ; and these are urged as the grounds of objection to the affidavit.

The *gravaman* of the action being an alleged breach of this contract, for which alone the attachment was sued out, the first question we will consider is this :—Was it sued out for the recovery of a "moneyed demand, the amount of which can be certainly ascertained", within the meaning of the Code ; or "to recover damages for a breach of contract, when the damages are not certain or liquidated?" If the former, *no special affidavit* was necessary ; if the latter, then, such affidavit was necessary.

On the hypothesis of a breach of the contract by defendants, it is contended that the plaintiff's demand, arising therefrom, is not a "moneyed demand"; but if it is, the further position is taken, that it is not a "moneyed demand, the amount of which can be certainly ascertained", within the meaning of the Code.

When the contract is one by which the plaintiff is to receive, not money, but the transfer of certain property, on a breach of the contract, the value of the property is the measure of damages, "*because this is the remuneration fixed by the agreement.*"—Sedg. on Dam. 203, 193 ; *McDonald v. Oyer*, 21 Penn. 417.   "If the consideration is to be paid in money, it must be paid ; if by the delivery of a thing of ascertained value, that value, if there is a breach, is the measure of damages."—*Strutt v. Farlan*, 16 M. & W. 249.

Taking the affidavit as a full and precise statement of the plaintiff's cause of action, we are invited to the consideration of a *smpposed* state of pleadings and proof in the cause, and to what would be the results thereof, to bring us to the conclusion that the plaintiff's is not a moneyed demand.   We decline to enter into such an investigation. No question is legitimately presented by the record requir-

ing it.   If no cause of action exists, or if any good defense can be made to the action, the proper time to demonstrate it is on the trial of the cause, under appropriate pleadings and proof.   The affidavit setting forth the contract, has not the character, nor was it intended to perform the office, of any part of the pleadings in the cause ; nor can we visit upon it the strictness required in pleading.   Viewing it only for the purposes of this case, in the attitude the case at present occupies, we hold it to be, *prima facie*, sufficient to show a "moneyed demand" in favor of the plaintiff; setting forth, as it does, a contract, and substantially averring a breach of that contract, and the law fixing the compensation for the breach in money.

If the demand sued for was a sum of money due by certain and express agreement, and the quantity was fixed and specific, and it did not depend upon any subsequent valuation to settle it, then it would be a *debt*, within the meaning of the first sub-division of the Code above quoted. But such is not the character of the plaintiff's demand ; it is for *damages* for a breach of contract; and the damages resulting from the breach as alleged, are not uncertain, or unliquidated.   " Unliquidated damages are such as rest in opinion only, and must be ascertained by a jury, the verdict being regulated by the peculiar circumstances of each particular case ; they are damages which cannot be ascertained by computation or calculation—as, for instance, damages for not using a farm in a workmanlike manner ; for not skillfully amputating a limb ; for carelessly upsetting a stage, by which a bone is broken ; for the breach of a marriage contract; and other cases of a like character, where the amount to be settled rests in the discretion, judgment, or opinion, of the jury."—Sedg. on Dam. 428 ; *Butts v. Collins*, 13 Wendell, 139.   Damages are unliquidated, when there is no criterion provided by the parties, or by the law, for their ascertainment.—*McCord v. Williams*, 2 Ala. 71.   They are certain, or liquidated, when the measure of damages is ascertained, or fixed, by the law of the contract, or the law operating upon the contract; or, when the facts upon which the demand is based being established,

the law is capable of measuring the damages accurately by a pecuniary standard.

The pecuniary standard in the case before us is, the value of the specific quantity and quality of cotton as named in the contract, on the first day of January, 1865. The fact that no place is named in the contract, as set forth in the affidavit, where the cotton was to be delivered, makes no alteration in the effect of the application of the principle announced. It matters not whether the legal construction of the contract is, that the cotton, being a ponderous article, was to have been delivered at the residence of the defendants, as is contended; or that, being a *loan*, it was to have been *returned* "*in kind*," to the *lender*. In either event, the pecuniary standard, by which the damages are to be measured, is the same. And when such a standard is provided, the damages are limited, specified, defined, and therefore *certain*, as opposed to *indefinite;* and, in the meaning of the Code, can be "*certainly ascertained.*" "*Id certum est, quod certum reddi potest.*"

This view of the law is fully sustained by the case of *Weaver v. Puryear & Williamson,* (11 Ala. 941,) in which it was held, that a demand for a breach of warranty of the soundness of a slave was one on which an action might be commenced by attachment, under the statute then in force, as, by the law acting upon the contract, the damages to which the party was entitled, upon a breach of the contract, was a sum capable of ascertainment. The effect of the decision in that case was, that the demand sued for was liquidated damages; and the decision is fully sustained by the authorities cited in the opinion of the court; especially by the case of *Fisher v. Consequa,* 2 Wash. C. C. 282. See, also, *Younge v. Holley,* 27 Ala. 203; *Gibson v. Marquis,* 29 Ala. 668.

It has been contended in argument, that no demand is embraced by the 2d sub-division of section 2503 of the Code, unless its very nature would authorize the suing out of an attachment upon it, as well *before*, as *after* its maturity; and that such not being the nature of the plaintiff's demand in this case, it can not be embraced by that sub-division. This argument must have been

14

made under a misapprehension of section 2503. By its express terms, there is but one class of cases in which an attachment can be issued, before the maturity of the demand; and that is when it is sued out "to enforce the collection of a *debt*." In all other cases, a right of action must have accrued, by the terms of the contract, or the nature of the transaction itself, before the right to an attachment to enforce any demand arising therefrom, can exist; and the premises of the argument being incorrect, the argument itself falls to the ground.

[2.] Our conclusion is, that no special affidavit was necessary in this case. But, if one was necessary, the plea in abatement could not be sustained. In cases requiring it, the special affidavit is made for the single purpose of enabling the judge or chancellor, issuing the attachment, " to determine the amount for which a levy must be made." When it is sufficient for this purpose, (and the judge or chancellor who is to act upon it must determine its sufficiency,) the requirement of the statute is fully satisfied. None of the other safeguards provided by the law, against injury and oppression in the use of the process, are dispensed with; and on the affidavit of the defendant, the amount for which the levy is made may be reduced, and the levy released to the amount of the reduction, at the return term of the attachment.—Code, § 2508. A statement of the facts and circumstances in the affidavit is required in no prescribed form, but as a predicate for the action of a judge or chancellor in a single matter, and as a step in a remedial proceeding conclusive upon no right of any party; 'and whether the statement shall be more or less definite and specific, must be regarded as resting in the discretion of the judge or chancellor, and not a proper subject for revision on appeal. Such has been the decision of the supreme court of Ohio, in an attachment case, involving a similar question.—*Harrison & Wiley v. King*, 9 Ohio St. R. 388. See, also, *Ex parte Banks*, 28 Ala. 28. To abate attachment suits, on pleas for defects in such affidavits, would not be "liberally construing the attachment law, to advance the manifest intent of the law."— Code, § 2562.

A statute of New York requires one, desiring to commence an action of *tort*, against a non-resident, by a justice's warrant of attachment, to state *facts and circumstances* within his knowledge, showing that his claim arises *ex delicto*. Under this statute, it has been held in that State, that there was no revisable error where the affidavit stated that the plaintiff verily believed that he had a good cause of action for fraud and deceit in the sale of certain goods.—*Pope v. Hart*, 35 Barb. 630 ; U. S. An. Digest, vol. 16, p. 4, § 23.

This case having been brought into this court by appeal, before final judgment in the court below, by consent of the parties, pursuant to an act of the legislature, approved February 23, 1866, authorizing such appeals in cases like the present, (Pamph. Acts, 1865–6, p. 94,) we affirm the ruling of the court below, at the costs of the appellant, and remand the cause for further proceedings.