# Fail's Administrator *v.* Presley's Administrator.

### *Trespass for killing Slave.*

1. *Acknowledgment of service, and appearance by attorney.* — An acknowledgment of service, made in the defendant's name by an attorney, will not be set aside at the instance of his personal representative, against whom the action has been revived on the defendant's death, when the evidence shows that it was made in the defendant's presence, with his knowledge, and without objection from him, and that the attorney's name was regularly entered on the trial docket, as attorney for the defendant, for several consecutive terms until his death.

2. *Pleadings written in pencil.* — All pleadings should properly be written with ink, and the court may, in the exercise of its discretionary power, refuse to allow them to be filed, if not so written ; yet, a demurrer or plea, found among the original papers in a cause, and in the handwriting of the defendant's attorney, cannot be rejected as evidence, when so offered, because written with a pencil.

3. *Error without injury in overruling demurrer to complaint.* — The overruling of a demurrer to the complaint is error without injury, when the defendant had the full benefit of his demurrer under the issue joined on his plea ; or when, if the judgment should be reversed on account of the error, he could not claim any benefit by the demurrer, because of a repeal of the law on which its validity depended.

4. *Emancipation proclamation ; its effect on existing cause of action.* — The proclamation of the emancipation of the slaves, January 1, 1863, did not destroy or impair an existing cause of action for damages on account of injuries inflicted on a slave, which caused his death.

5. *Measure of damages in trespass, for personal property destroyed.* — In trespass

for injuries inflicted on a slave, which caused his death, the measure of damages is the value of the slave at the time of the trespass, with interest thereon ; and the jury cannot look to the hire in estimating the damages.

APPEAL from the Circuit Court of Wilcox. Tried before the Hon. P. O. HARPER.

JONES & JONES, for appellant.

S. J. CUMMING, *contra.*

PETERS, C. J.—On September 5, 1867, Joseph H. Presley, as plaintiff in the court below, commenced suit against Jeremiah Fail, as defendant, by summons and complaint in the statutory form, in an action of trespass *vi et armis*, for damages for killing a slave, named Israel, the property of said Presley, by whipping said slave until he died from the effect of said whipping, on July 7, 1862. Afterwards, the defendant, said Fail, died, and the suit was revived in the name of his personal representative ; and then Presley died, and the suit was again revived in the name of his personal representative. On the trial below, there was judgment for the plaintiff ; and the defendant brings the cause to this court by appeal. Here, he assigns twelve causes of error, which are noticed below, so far as is necessary to settle the merits of this case.

1. The first assignment brings to notice a motion to set aside the service of the summons and complaint in the court below. This service is in these words : " I hereby acknowledge legal service of this summons and complaint, this 7th day of September, 1867." (Signed) " Jeremiah Fail, by J. L. Reddish, att'y." The trial docket of the court in which this suit was brought, at the Fall term of said court, 1868, shows that the cause was entered on said docket, and that among the names of the attorneys who had appeared for the parties, " Henderson & Reddish," are entered for the defendant, Fail. Like entries of the names of the attorneys for Fail appear to have been made on said trial docket regularly, until the Fall term of said court in 1871, when the death of said Jeremiah Fail was suggested, and *sci. fa.* to W. G. Fail, as administrator of said deceased, was ordered, and the cause was continued. This *sci. fa.* was executed on December 13, 1871. In 1872, the cause was again continued. Then, at the Fall term of said court, in 1872, the death of Presley was suggested ; and thereupon, W. C. Jones and E. Jennie Presley, as administrator and administratrix of said Presley's estate, appeared, and were made parties to the said suit, and the cause was revived in their names. It further appears that Jones & Jones, as the attorneys of W. G. Fail, as administrator of Jeremiah Fail, deceased, first appeared in

said cause at the Fall term of said court, 1872, and again at the Spring term thereof in 1873 ; and then moved the court to set aside the service of the writ or summons on said Jeremiah Fail ; the same, as alleged in the motion, never having been served on him in his lifetime. On this motion, evidence was introduced to show that the acknowledgment of service on said summons, as shown above, was made by said Reddish, in the presence of said Fail in his lifetime, and with his knowledge, and without any objection from him. There does not appear to have been any order of court reviving said cause against the representatives of said Fail ; but the style and title of the cause was changed, so as to show that the representatives of the original parties to said suit prosecuted and defended the same. On the hearing of this motion, the same was denied by the court below. To this the defendant excepted.

There was no error in this. The Code requires the clerks of the circuit courts of this State " to keep a trial docket of civil cases, in which must be entered all civil cases standing for the trial term, at each term, in the order in which they were brought, the names of the attorneys employed, the character of the action, and the orders which have been made in each cause at any previous term." Rev. Code, § 767. The first rule of practice under the general rules makes the entry of the attorneys' names on the " book of appearances " equivalent to an appearance of record. Rev. Code, § 815. This court will infer that the trial docket is copied from the appearance docket, and used for this purpose, where the attorney does not deny the entry of his name. Less than this would make such entries mere snares to mislead the opposite party.

2. The demurrer, written in pencil, was sufficient to show, in aid of the entries on the trial docket, that the defendants had made an appearance. For this purpose it was competent, without giving it the full validity of a plea. I think all the pleadings should be in writing with ink ; and the court, under its discretionary power, may compel this, or refuse the plea to be filed. They are records, and the record should be in writing. 6 Call, 78 ; 1 Dana, 595. This demurrer was found among the original papers in the cause, and was placed there by the attorneys of the defendant. There was no error in refusing to reject it as evidence, on the defendant's motion, as shown in the bill of exceptions.

3. The demurrer to the declaration is a question of much greater difficulty. The action was brought before the law, which merged the right to sue for an injury, which grew out of a trespass that amounted to a felony, until after the trial for the felony, whether it terminated in an acquittal or conviction, was changed by our statute. Our statute became a law, at least

after the Revised Code was proclaimed under the provisional government of this State, which was erected after the fall and failure of the late rebellion, in 1868. Rev. Code, P. IV. Acts 1867, §§ 8, 9; also, Rev. Code, § 4423. This action was brought on September 5, 1867. But, before the demurrer was pleaded, and before it was heard, which was in 1873, the rule at common law was changed as above shown. Rev. Code, § 4423. The Revised Code was then fully in force. Acts 1868. The objection raised by the demurrer to the complaint is, that it did not allege that the defendant had been tried and acquitted, or convicted, of the felony involved in the trespass complained of, before this suit was commenced. The court below overruled the demurrer, and the defendant excepted.

The decisions of this court are not altogether free from obscurity on the question thus raised. In *McGrew* v. *Cato's Ex'r*, this court say, that such an objection is " good matter of defence under the general issue." Minor, 8. In a later case of *Middleton* v. *Hornes* (3 Port. 424), which was trespass for killing a slave, it seems that the demurrer in such a case as this would have been sustained. But, in the case of *Blackburn* v. *Minter* (22 Ala. 616) the court, in effect at least, came back to the principle settled in Minor, above quoted (Minor, 8); that is, that the objection to the complaint here attempted to be raised, is good as a defence to the merits, on a plea of not guilty. This latter plea was pleaded by the defendant, and issue was taken on it; and the verdict of the jury was against it. Then, the defendant cannot complain, as he has had the benefit of his objection by demurrer, on his plea to the merits.

But, before the demurrer had been pleaded, and before it had been heard, and before the cause was tried, the law on which the validity of this plea depended had been repealed, and this repeal was then in full force. At the trial, it was the duty of the court to charge the jury, that the law of so much of the defence as rested on the common-law principle of merger in such a case as this, had been overturned by the statute above quoted. Rev. Code, § 4423. Then, whether the court below erred in overruling the demurrer, or not, is now become immaterial; for, if the cause should be reversed and remanded, because of the error in overruling the demurrer, it could not now be sustained, as the principle of law on which it is founded has been repealed. In such a case, there should not be a reversal. 14 Wall. 361, *Pugh* v. *McCormick*. The same would have been the case had the like defence been interposed by plea to the merits, and sustained by proof. A plea based upon a repealed law could not avail as a defence.

4. The defendant's third plea was properly overruled. The slave was whipped to death before emancipation was proclaimed, and while he was the property of the plaintiff's intestate. The right to damages for his loss accrued at his death, in 1862. After this right so accrued, the act of emancipation did not destroy it. *McElvain* v. *Mudd*, 44 Ala. 48. The right having once accrued, it cannot be taken away by legislation. *Gunn* v. *Barry*, 15 Wall. 610 ; *Newman* v. *Reed*, at the present term.

5. The seventh assignment of error assails the accuracy of the charges asked by the plaintiff, and given by the court against the objection of the defendant, as shown in the record. It was this : " The court charged the jury, that if they believed that Israel (the slave killed by the whipping) died from the effects of the punishment alleged to have been inflicted by Fail, the measure of damages would be the value of the slave at the time of his death ; and that in addition to that value, they may add interest thereon, or *may look to the value and hire both, as a guide to a conclusion.*" This was error. It is now laid down as the general rule, that where trespass is brought for the destruction of personal property, and no circumstances of aggravation are shown, the action is to be regarded as one of trover ; and the value of the property, with interest on such value, furnishes the rule for the measure of the damages ; because, if the owner of the property gets the value of the property destroyed, and interest, this is, in effect, a sale of the property to the defendant, at the price fixed by the jury. It passes the property out of the plaintiff, to the defendant. In such case, the defendant would not be liable for the hire of property, for which he had paid the market price. The latter part of the above charge, which allowed damages for the value of the slave, and for hire, was, therefore, incorrect. Sedg. Damages (4th ed. 1868), p. 620 top, and cases cited in the note 1 ; *Tatum* v. *Manning*, 9 Ala. 144 ; *Lee* v. *Matthews*, 10 Ala. 868 ; 41 Ala. 678 ; 40 Ala. 212. For this error, the cause must be reversed.

The charges numbered 1, 2, 3, which were asked by the defendant, were properly refused. The evidence does not show, or tend to show, that Dr. Presley, the plaintiff's intestate, sent the slave to the manager of his plantation, who was then the defendant, Fail, to be whipped or beaten to death, or that he gave his agent greater authority than to carry the slave to Fail for chastisement, for an offence which he was suspected to have committed. When the agent delivered the slave to Fail, his authority was at an end ; and if Fail went beyond the infliction of a proper chastisement, he took the peril of his abuse of his power upon himself. These charges are abstract. There is no evidence to sustain them.

[Harralson v. Stein.]

The judgment of the court below is reversed, and the cause is remanded for a new trial.