# Jones's Adm'r *v.* Crews.

*Garnishment on Decree in Chancery.*

1. *When garnishment may be sued out on decree in chancery.*—A garnishment may be sued out on a money decree in chancery, as on a judgment at law, or in aid of a pending action (Code, §§ 3854–56); but only the same demands and liabilities can be thus reached that might be reached and subjected by the same process at law.

2. *What may be reached by garnishment.*—There are only two classes of cases in which, under the statutory provisions giving the remedy by garnishment (Code, §§ 3294–97), judgment may be rendered against the garnishee: 1st, where an indebtedness or liability to the defendant is admitted or proved, for which he might maintain an action of debt or *indebitatus assumpsit* against the garnishee; 2d, where the garnishee has the possession of specific property belonging to the defendant, and fails to deliver them to the officer on demand; and the courts can not, by any liberality of construction, extend the remedy to any other cases.

3. *Same.*—An existing contract, reduced to writing, by which the garnishee promised to pay and deliver to the defendant, at a future day, a certain quantity of cotton of a specified quality, does not fall within either of the classes for which the statute provides, and does not create such a liability as can be reached by garnishment.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. H. AUSTILL.

The transcript in this case shows that, on the 26th August, 1878, James H. Perdue, as the administrator *de bonis non* of the estate of Joseph A. Jones, deceased, having obtained a decree at the October term, 1877, of said Chancery Court, against Sarah J. Jones, for the sum of $305.73, with $180.20 costs of suit, made an affidavit before the register of said court, "that he believes process of garnishment against C. Madison Crews is necessary to obtain satisfaction of said judgment, and that said Crews is supposed to be indebted to said defendant, or has effects of said defendant in his possession, or under his control." A garnishment was thereupon issued by the register, and served upon said Crews; who thereupon appeared at the September term, 1878, and thus answered: "Garnishee says, that he was not indebted to said Sarah J. Jones at the time said writ was served upon him,

nor is he now indebted to her, nor will he be indebted to her in the future, by a contract then or now existing, unless the following statement of facts constitutes such indebtedness: On the 4th day of November, 1877, this garnishee purchased from said Sarah J. Jones a tract of land in Butler county, containing about 200 acres; which land, on that day, she conveyed by deed, with covenants of warranty, to this garnishee, who, at the same time, executed to said Sarah J. Jones, in consideration of said sale, his four several contracts in writing, as follows: to pay and deliver to the said Sarah J. Jones, on the 15th day of October, 1878, in the town of Greenville, four bales of lint cotton, weighing 500 lbs. each, to class middling; also, a like contract for four bales of cotton, to be delivered the 15th October, 1879; also, a like contract for six bales of cotton, to be delivered October 15, 1880; and a like contract for the delivery of six bales of cotton October 15, 1881. Garnishee was notified by Herbert & Buell, at Greenville, about December, 1877, that the contract above mentioned for four bales, due October 15, 1878, had been transferred to them by said Sarah J. Jones; and he has been notified, also, by W. F. Jones, that the said contract for six bales of cotton, due October 15, 1881, has been transferred to him by said Sarah J. Jones. Garnishee is not otherwise indebted to said Sarah J. Jones, and he asks the protection of this court in the premises." On this answer, the court discharged the garnishee, on the motion and objection of the defendant, Sarah J. Jones; and its judgment to that effect is now assigned as error by the plaintiff.

WATTS & SONS, for appellant.—*Indebtedness*, as the word is used in the statutes giving a remedy by attachment and garnishment, is not confined to debts payable or solvable in money only. A creditor is one who has the right to require the fulfillment of an obligation or contract; and a debtor, one who is bound to fulfill an obligation or contract.—1 Waite's Actions and Defenses, 412–15; 1 Leigh, Va. 285; 9 Conn. 430; 28 Conn. 103; 12 Ohio St. 163; 18 Barbour, 139; 45 Penn. St. 416. The remedy by garnishment was intended to reach the debtor's property in the hands of another person, and subject it to his debts: it is but a species of levy on his property. Though it may be called a legal process, it subserves the purposes of an equitable writ also; and by successive legislative changes, as in the case of executions, its scope and operation have been enlarged and extended. There is no reason, in the nature of things, why an obligation to pay in cotton should not be reached by a garnishment, as well as an obligation to pay in money. The case of *Nesbitt v. Ware*

[Jones' Adm'r v. Crews.]

& McClanahan, 30 Ala. 68, on this point, is inconsistent with Rose's Executor v. Bozeman (40 Ala. 2:2), and Henry & Caldwell v. Murphy & Co. (50 Ala. 460); and it is submitted that, on this point, that case is wrong in principle. That the defendant herself might have maintained *indebitatus assumpsit* on this contract, see 13 Penn. St. 173 ; 7 Mass. 329 ; Clark v. Fairchild, 22 Wendell, 576; Way v. Wakefield, 7 Vermont, 223; 35 N. H. 477 ; 46 N. H. 146 ; 10 John. 38; 1 Pick. 57. In the eye of the law, *id certum est, quod certum reddi potest;* and whenever the amount of the recovery is fixed by the terms of the contract, or is measured accurately by the law itself, the debt is ascertained with certainty, and should be within the reach of legal process.

HERBERT & BUELL, contra.—The writ of garnishment was unknown to the common law. It is derived wholly from the statute, and the court can not enlarge its operation by construction. The decisions of this court, in an unbroken series, affirm that only debts payable in money can be reached by garnishment.—See cases cited in 1 Brickell's Digest, 176, §§ 320–22. The decisions in other States are to the same effect; and the reason is given by Drake—because the court has no power to interfere with the contracts of parties, and to make the garnishee pay in money what he had agreed to pay in something else.—Drake on Attachments, § 550.

STONE, J.—Writs of garnishment may be issued, as a means of collecting money decrees of the Chancery Court, and are "governed by the law regulating garnishments from the Circuit Court, as far as the same may be applicable." Code of 1876, § § 3854–5–6. In the Circuit Court, "a judgment creditor, his agent, or attorney, may obtain process of garnishment against any person supposed to be indebted to the defendant, in any cause where execution could issue on the judgment, by making affidavit before the clerk of the court in which the judgment was rendered, that such person is supposed to be indebted to, or have effects of the defendant in his possession, or under his control, and that he believes process of garnishment against such person is necessary to obtain satisfaction of such judgment."—Code of 1876, § 3218. Section 3219 makes provision for garnishment in aid of a pending suit, "when a summons, or summons and complaint have issued." Section 3293 directs when and how the garnishee shall answer. Section 3294: "If he answer, and admit indebtedness to the defendant, judgment thereon must be rendered against him." Section 3295; "If he admit the possession of chattels of the defendant, judgment of condem-

nation must be rendered, that they be delivered up on demand, after the rendition of judgment on the attachment [or other suit] in favor of the plaintiff, or so much as may be necessary to satisfy the judgment, and the sheriff must make sale thereof." Section 3296: "If he fail to deliver them to the sheriff on demand, he must make return thereof to the clerk, who must thereupon issue a writ of *fieri facias* against him, in favor of the plaintiff, for the amount of the judgment and costs." Section 3297 provides a mode of relief from this, sometimes, severe penalty, if the failure to deliver "is without fault or negligence on the part of the garnishee."

It will thus be seen that there are two states of case, in which a judgment may be rendered in favor of the plaintiff in garnishment: *First*, when a debt is admitted, or shown to be due, from the garnishee to the judgment or attachment debtor; in which case, a judgment is rendered against the garnishee, for a fixed, ascertained sum; which judgment is collectible by execution, as other money judgments are. In the *second* class—cases in which the garnishee admits his possession of chattels of the defendant—no personal judgment is rendered against the garnishee, in the first instance, except an order and direction that he deliver the chattels up, on the demand of the sheriff. If he deliver the chattels on such demand, he is discharged. It is only when he fails to deliver on demand, that any blame attaches to him, or any final process for the collection of money can be issued against him. The law has provided these two modes of collecting, by garnishment, a demand in judgment, or in suit; and it has declared no other use, to which this common-law process can be applied, and has provided no machinery for adjusting its remedial powers to any state of case, other than the two noted above. To repeat in brief: there can be only a money judgment against the garnishee, on a debt ascertained to be due from him to the defendant, or a condemnation of chattels in his hands, the property of the defendant, and an order that he deliver them to the sheriff on demand, to be sold in satisfaction of the plaintiff's judgment, not against the garnishee, but *against the defendant*.

Garnishment is a proceeding of purely statutory creation, unknown to the common law; and while we are inclined to construe it favorably, as highly remedial and beneficial, we have no power to originate machinery, or process, by which to adapt it to conditions, which its statutory provisions are not broad enough to cover. The court having power only to render an unconditional money judgment against the garnishee, or to condemn personal chattels in his hands, it early became a question, what description of debt or liability would

[Jones' Adm'r v. Crews.]

authorize a personal money judgment against the garnishee. It was settled, that only such debts as would maintain debt, or *indebitatus assumpsit*, if sued on by the defendant, could be the subject of such condemnation and personal judgment. *Presnall v. Mabry*, 3 Por. 105 ; *Smith v. Chapman*, 6 Por. 365 ; *Mims v. Parker*, 1 Ala. 421 ; *Blair v. Rhodes*, 5 Ala. 648 ; *Harrell v. Whitman*, 19 Ala. 135 ; *Roby v. Labuzan*, 21 Ala. 60 ; *Cook v. Walthall*, 20 Ala. 334 ; *Self v. Kirkland*, 24 Ala. 275 ; *Lundie v. Bradford*, 26 Ala. 512 ; *Nesbitt v. Ware*, 30 Ala. 68 ; *Powell v. Sammons*, 31 Ala. 552 ; *Godden v. Pearson*, 42 Ala. 370 ; *Henry v. Murphy*, 54 Ala. 246.

In *Mims v. Parker, supra*, the promise of the garnishee was to pay his creditor in notes, which he was to purchase on the latter, but the garnishee had failed to obtain the notes. The garnishee was discharged. This court said : " This is evidently not a money contract, and to treat it as such, and render a judgment against the garnishee, would be doing him great injustice. It would be enlarging his contract with Redus, both as to the mode and time of payment." We infer the garnishment was served before the debt of the garnishee was due, although the report of the case does not expressly say so. If the debt was past due, and the debtor had failed to procure the notes, possibly other principles would have governed the case.—See *Weaver v. Puryear*, 11 Ala. 941 ; *Bozeman v. Rose*, 40 Ala. 212 ; *Peter v. Butler*, 1 Leigh, 285 ; *Ward v. Begg*, 18 Barb. 139 ; *Strock v. Little*, 45 Penn. St. 416 ; *Baylies v. Fettyplace*, 7 Mass. 325 ; 1 Waite's Actions, 384.

In *Nesbitt v. Ware*, 30 Ala. 68, the legal effect of the contract was, " that Nesbitt should pay Gray, in the installments, and at the times specified therein, six thousand dollars, in iron at five cents per pound, and castings at four cents per pound, to be delivered at the place or places where made ;" with a condition superadded, giving Nesbitt the privilege of discharging it by paying the note of Gray for $1,941, payable to the State, and giving his own note for $3,000, payable in money in specified installments. This court said : " Gray has no right, under the contract, to hold the garnishee liable for the three thousand dollars for which the latter had the privilege to give his obligation, unless that obligation has been given. . . If liable at all, his liability is for a part, or the whole, of the six thousand dollars first mentioned in the contract, to be paid in iron and castings as therein shown. . . Supposing him liable for a part or the whole of that six thousand dollars, the question is, could Gray have maintained debt, or *indebitatus assumpsit*, to enforce that liability. We think it clear that he could not." And it was ruled, that the

[Jones' Adm'r v. Crews.]

indebtedness disclosed could not be reached or condemned by proceedings in garnishment.

In the case of *Roby v. Labuzan*, garnishee, the latter had advanced money to Jones, defendant in attachment, and, to secure its repayment, had shipped a lot of cotton, turned over to him by Jones for the purpose, to a commission-house in New Orleans, to be sold, and, of the proceeds, Labuzan was to repay himself for the advances, and the residue would be going to Jones. The cotton was not sold when the garnishment was served. DARGAN, C. J., delivering the opinion of the court, said : "But it is contended that the garnishee, though not strictly indebted at the time of the service of the writ, nevertheless had property in his possession, to-wit, the cotton, and that he is liable for the value thereof, over and above the advances made by him to Jones, the defendant in attachment. To this argument I can not assent. The process of garnishment can reach only the legal rights of defendant. What I mean by legal rights is, that it reaches such debts as can be enforced by the defendant in the attachment, by suit at common law, and, also, such property as would be liable to seizure and sale, if the sheriff could get possession of it. . . It may, however, be said, that the right of Jones to the surplus, after paying the advances, is a legal, and not an equitable right. I admit it is so, after the money came into the hands of Labuzan, the garnishee. But, considering the cotton as property at the time of the garnishment, and we are bound so to consider it, it is very clear that it could not have been levied on in the possession of the garnishee, who had made advances upon it. . . In that condition, the cotton was not subject to execution at law ; and I do not see how it could be liable to attachment. . . If, then, we consider the cotton as property in the possession of Labuzan, it could not be sold under legal process against the defendant, and, consequently, it can not be reached by process of garnishment. And if we consider the right of Jones as the mere right to demand the surplus of the money it might bring after the payment of the advances made by Labuzan, then the decisions we have referred to furnish the decisive answer, that, at the time of the writ, there was no debt due from the garnishee to the defendant in the attachment."

In the present case, the garnishee was summoned, and filed his answer in October, 1878. He admitted he had executed to the defendant, Jones, his two promises in writing, one for the payment of four bales of cotton, of certain class and weight, October 15th, 1879, and the other for the payment of six bales, October 15th, 1880. At the October term of the

[Jones' Adm'r v. Crews.]

court, 1878, the chancellor discharged the garnishee on his answer. It will be observed that, under this contract, Crews, the garnishee, made no promise to pay money. Neither was it a promise to pay a sum of money, which might be discharged by the delivery of cotton. It was a simple promise to deliver and pay cotton. When the garnishment was sued out and served, and when the answer of the garnishee was filed, it could not be known that the liability from Crews to Jones would ever become a money debt. We can not indulge the presumption that Crews would violate his contract, and fail to deliver the cotton. The court had no power to change the obligation to deliver cotton, into a promise to pay money. That would be to add a term or terms to the contract, which the parties had not themselves agreed upon. At the time of the summons, and at the time of the answer, there was no money debt due from Crews to Jones, and it did not appear, and could not be known, that the garnishee would be indebted in future to the defendant, in any money debt, by a contract then existing.—Code of 1876, § 3269. It is clear that no money judgment could be rendered against the garnishee on his answer. Nor does the answer admit, or tend to show, the garnishee had in his possession chattels belonging to the defendant. To come within this clause of the statute, the chattels must be so held and controlled by the garnishee, as that, when so ordered by the court, he can deliver them to the sheriff on demand, that the latter may make sale thereof. Code, § 3295.

The statutes allowing garnishments make no provision, and furnish no machinery for such a case as this.—Drake on Att. § 550. In *Roby v. Labuzan, supra,* Ch. J. DARGAN said: "It may be that our decisions have so restricted the operation of this process, as to lose some of the benefits that creditors might have derived from it; but we deem it best to adhere to them, and let the legislature extend the remedy." My own opinion is, that in the absence of further legislation, the rulings of this court have been substantially correct. We think, however, the remedy might be made more efficient, by so extending its provisions, as to bring within its scope and power contracts for the payment of things other than money.

The decree of the chancellor is affirmed.