## OSWALD vs. GODBOLD.

1. The plaintiff cannot recover under the common counts, in assumpsit for use and occupation, when the proof shows that there was a special agreement between the parties, by the terms of which the plaintiff was to receive a specified quantity of lumber for the rent of the premises, and it is not shown that by the agreement any value in money was placed on the lumber.
2. The statute of this State (Clay's Digest 505, § 1) does not embrace those contracts for rent which contain a reservation of rent to be paid in specific articles, the value of which is not ascertained by the agreement of the parties.

ERROR to the Circuit Court of Mobile.

Tried before the Hon. L. Gibbons.

The plaintiff brought an action of assumpsit in the Circuit Court of the county of Mobile against the defendant, and filed his declaration containing five counts.

The first count avers, that plaintiff rented to defendant a saw and grist mill for the year 1845, for which defendant agreed to pay him 150,000 feet of assorted lumber, to be delivered in the city of Mobile; which he failed to deliver, to plaintiff's damage $1000.

The second count is for use and occupation of the mills by the defendant, and an undertaking on his (defendant's) part to pay the plaintiff $1500 therefor.

The third is in *quantum meruit* for use and occupation of the mills, with averment that they were reasonably worth $1500.

The fourth sets out a special contract between the parties as follows: "And whereas the said plaintiff being the owner of a certain saw and grist mill in Mobile county, situated on Cole Creek, with the appurtenances, and the said defendant

being anxious to rent the same from the said plaintiff, the said defendant on the 23d day of January, 1845, in the county of Mobile, in consideration that the said plaintiff, at his, defendant's, request, would rent to him, the said defendant, the said saw and grist mill, with its appurtenances, for one year then next ensuing, and would put the said mill in repair, and keep it in repair during the said year; he, the said defendant, then and there promised to said plaintiff, in consideration thereof, to deliver to him, in Mobile, one hundred and fifty thousand feet of merchantable lumber; and the plaintiff avers, that thus confiding in the said promise of the defendant, he, the said plaintiff, on the day and year last aforesaid, did rent to the said defendant the said saw and grist mill, with its appurtenances, for one year from the said 23d day of January, 1845, and did put the said mill in repair, and kept it in repair for the said year for which it was rented to the defendant, and did then and there do all things which were to be done, and the said defendant then and there went into possession of the said mill, with its appurtenances, and had, used and enjoyed the same for twelve months then next ensuing; yet, the said defendant, not regarding his said promise and undertaking, failed, refused and neglected, although often requested so to do, to deliver to the said plaintiff the one hundred and fifty thousand feet of merchantable lumber, in Mobile, in pursuance to his said undertaking and promise, to the plaintiff's damage one thousand dollars."

The fifth is a mixed count, in which the money counts, generally, are blended.

The breach is for failing to deliver the lumber in Mobile, and failing to pay the money claimed.

On the trial, as appears by the bill of exceptions, the plaintiff introduced evidence proving that one Johnson, (the witness,) a short time before the defendant leased the mill, made an agreement with the plaintiff to lease his mill on Cole Creek, in Mobile county, for one year; he was to give 150,000 feet of merchantable lumber for the rent. Witness stated that lumber at the mill was worth $9 per thousand; the contract between plaintiff and witness was never perfected; the witness further stated that defendant told him, that he (defendant) had rented the mills for one year, on the same

Oswald v. Godbold.

terms that witness was to get them, except that the dam was to be raised; how much witness did not know. The testimony was doubtful, whether the lumber, by the contract, had a fixed value at the mill or not. It was also proved, that the defendant went into possession of the mill in January, 1845, and used it for the year, when he delivered it to the plaintiff.

The plaintiff then offered to prove, under the common counts, the value of the mills for one year by way of rent, and stated, that in such proof he would keep within the amount proved on the special contract. The defendant objected to this proof, and the court sustained the objection, unless the complainant would show that the contract itself contained a rule by which the damages would be estimated; to which the plaintiff excepted.

Defendant then proved, by the millwright who had been employed by the plaintiff to work on the mill during the year, that he heard both plaintiff and defendant say, that the plaintiff was to rent the defendant the mill for a year; that he was to raise the dam two feet and repair the mill, for which, defendant was to give him 150,000 feet of lumber; he also proved that defendant had delivered to the plaintiff nearly 100,000 feet of lumber, and since the lease was out had paid him $125 in cash. He proved that the dam was not raised, and that the mill was only partially repaired; and that the defendant had been damaged to a great extent, on account of the dam not being raised.

The plaintiff, by way of rebutting proof, offered evidence showing that the dam of the mill had been raised two feet, and the repairs made; by another witness, who had been employed by defendant about a week, in the commencement of his tenancy, that the dam had been raised a foot, and he never heard the defendant complain that the dam had not been raised. Plaintiff further proved, that he was frequently at the mills while defendant occupied and used them, was often with him, and never heard him complain that the dam was not raised and the repairs made; he seemed to be satisfied with his bargain.

The plaintiff again offered to prove what the use and occupation of the mills were worth, during the year defendant rented them, and that they were worth fifteen hundred dol-

lars. The defendant objected to the introduction of this proof under the common counts; the court sustained the objection, and the plaintiff excepted.

The court then charged the jury, "that it was left to them to say what the contract was between the parties; that if they found, that it was, that the lumber, by the contract, had a value put upon it at the mill or elsewhere, then they could consider the defendant's and plaintiff's evidence on the common counts, in case such evidence did not support the special count on the contract, and plaintiff would be entitled to recover on said counts if any thing was due him on his contract with the defendant. But if they found the lumber, paid the plaintiff by the defendant, had no fixed value by the contract, then the plaintiff's evidence could not be applied to the common counts, and the plaintiff must recover on his special count on the contract, as declared upon in the declaration" or not at all. To this charge the plaintiff excepted.

The plaintiff assigns for error the matters set forth in the bill of exceptions.

JNO. A. CAMPBELL, for plaintiff in error:

The evidence excluded by the Circuit Court, and the charge given by the court, upon the application of the evidence to the counts of the declaration, were in contradiction to the statute, Clay's Digest 505, title Rent. 1 S. & P. 294; 1 Ala. Rep. 535; 7 Wend. 107; 13 John. 240.

REQUIER, contra:

Where the damages consequent upon the breach of a contract are unliquidated, no recovery can be had upon the general counts, but the plaintiff must stand or fall by his special count. 1 Stew. 12; 3 ib. 190; 7 Ala. Rep. 952; 10 ib. 330; 11 ib. 273; 12 ib. 221; ib. 726.

LIGON, J.—It was not insisted in the argument, that under the state of the pleadings and proof disclosed by the record, the plaintiff in error is entitled to recover on the special contract set out in his declaration; but the error chiefly complained of is, the refusal of the court to allow the proof of the value of the premises by way of annual rent, to go to the jury on the common counts.

In Snedicor v. Leachman, 10 Ala. Rep. 330, it was held by this court, that when the plaintiff declares on the common counts, he cannot recover, if the proof shows there was a special contract between the parties that the plaintiff was to receive specific articles in payment, and this, notwithstanding the testimony concerning the special contract, did not disclose all its terms. The court in that case takes the true distinction between those cases of this class, in which a recovery may be had on the common counts, when a special contract is shown to exist, and those in which it cannot. In that case, it is said, that "the plaintiff may recover on the common counts, although there is a special contract, whenever, by the breach of the contract, the plaintiff is entitled to recover a sum *in numero;* that is, where the damages for the breach of contract are liquidated, and require nothing to be done but a mere calculation."

The same rule had been previously acted on in Sprague v. Morgan, 7 Ala. Rep. 952, and has since, in Aikin v. Bloodgood, 11 Ala. Rep. 221, Anderson v. Rice, at the last term, and several other cases which it is needless to cite; and we have no doubt, it is the true rule in such cases.

In the present case, the proof clearly shows, that there was a special agreement between the parties, by the terms of which the plaintiff was to receive one hundred and fifty thousand feet of lumber for the rent of the mills; but the testimony does not show, that by that agreement any value in money was placed on this lumber, by the hundred or by the thousand feet, so that, by a mere calculation, the jury could ascertain the plaintiff's damage. On such contracts, the law fixes no invariable rule by which the damages are to be measured. If the failure to deliver the lumber had put the plaintiff to no other inconvenience than the mere disappointment arising from such non-delivery, the measure of damages would be, the value of the lumber at the agreed place and time of delivery; whereas, if he were engaged in building, and his workmen were delayed and hindered by such non-delivery, the measure of damages would be increased in proportion to the actual injury sustained. It presents, then, a case of unliquidated damages, and the proof offered by the plaintiff, and ruled out by the court, was clearly inadmissible under the common counts.

The counsel for the plaintiff insists, however, that although the rule alluded to may be considered as the true one in ordinary cases, yet our statutory regulations, in relation to actions for the recovery of rent, will exempt this case from its operation.

That statute provides: "It shall be lawful for any person or persons to whom any rent may be due, or the executors or administrators of such person, when the demise is not by deed, or if by deed, not specifying the rent to be paid, to recover a reasonable satisfaction for the tenements occupied by the defendant, in an action on the case for the use and occupancy of what was held and enjoyed; and if, on evidence on the trial of such action, any parol demise reserving certain rent, or demise by deed, but no rent therein agreed on shall appear, in either case, the plaintiff in such action shall not be nonsuited, but shall recover a reasonable satisfaction for the tenements occupied."

It is evident, that the legislature intended to prevent nonsuits in those cases of parol demise, reserving rent to be paid in money, in which the special agreement between the parties was inartificially set out, or wholly omitted by the pleader in his declaration; and in those in which assumpsit, and not covenant, was brought, when the demise was by deed, which did not ascertain the amount of such rent. It is also evident, that its terms were never intended to embrace those contracts for rent, which contained a reservation of rent to be paid in specific articles, the value of which was not ascertained by the agreement between the parties.

There is nothing in the cases to which we are referred by the counsel for the plaintiff in error, to conflict with these views.

There is no error in the record, and the judgment must be affirmed.