## ROSE'S EXECUTORS *vs.* BOZEMAN.

[ACTION FOR BREACH OF SPECIAL CONTRACT TO DELIVER COTTON.]

1. *Measure of damages.*—In an action by the buyer, against the seller, to recover damages for the breach of a special contract to deliver cotton at a specified time and place, the measure of damages is the value of the cotton at the time of the breach; and the fact that the price has been paid in advance, does not affect the principle.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JOHN K. HENRY.

THIS action was brought by Howell Rose, against Nathan Bozeman and D. W. Bozeman, and was commenced by original attachment, which was sued out on the 4th August, 1865, and which was levied on fifty-one bales of cotton, as the property of said Nathan Bozeman. At the fall

term, 1865, the plaintiff discontinued his action against D. W. Bozeman, and filed a complaint against Nathan Bozeman alone.   The complaint contained but a single count, which was as follows : " The plaintiff claims of said defendant thirty thousand dollars, as damages, for the breach of an agreement entered into by him and said D. W. Bozeman, dated at Wetumpka, on the 3d June, 1863, by which they promised to deliver to said plaintiff, on the 1st day of January, 1865, to said plaintiff or order, in the city of Wetumpka, forty-eight thousand eight hundred and forty-six pounds of ginned cotton, packed in bales, and in good merchantable order, and of the quality of 'middlings'; and plaintiff avers, that said defendant and D. W. Bozeman did not, nor did either of them, deliver to said plaintiff, or to his order, on the 1st day of January, 1865, or since, at the city of Wetumpka or elsewhere, forty-eight thousand eight hundred and forty-six pounds, nor any other quantity of ginned cotton, packed in bales or otherwise, in good merchantable order, and of the quality of 'middlings,' nor of any quality ; and plaintiff says, that he has been damaged, by the said breach of said agreement, thirty thousand dollars, which he claims in this suit."

At the February term, 1867, the death of the plaintiff was suggested, and the action was revived in the names of W. T. Hatchett and others, as his executors ; and the plaintiffs filed, by leave of the court, an additional count, in these words : " And plaintiff further claims of said defendant thirty thousand dollars damages, for the breach of another agreement, entered into and made with said plaintiff, on the 3d day of June, 1863, by said defendant and one D. W. Bozeman, in writing, whereby they promised to deliver to said plaintiff or order, on the 1st day of January, 1865, in the city of Wetumpka, forty-eight thousand eight hundred and forty-six pounds of ginned cotton, packed in bales, and in good merchantable order, and the quality to be 'middlings'; and said plaintiff avers, that the consideration of said promise and agreement by said defendant and D. W. Bozeman was the delivery of forty-eight thousand eight hundred and forty-six pounds of ginned cotton, packed in bales, by the said plaintiff to the said

defendant, in the said city of Montgomery, on (to-wit) the 3d day of June, 1863, and said defendant and D. W. Bozeman, in consideration thereof, made their promise aforesaid. And 'plaintiff further avers, that said Nathan and D. W. Bozeman did not, and that neither of them did, deliver to said plaintiff, or to his order, in the city of Wetumpka or elsewhere, on the 1st day of January, 1865, or at any other time since that day, forty-eight thousand eight hundred and forty-six pounds of ginned cotton, packed in bales, and in good merchantable order, of the quality of 'middlings,' nor any quantity of ginned cotton, packed in bales or otherwise ; and he therefore claims the said sum of thirty thousand dollars as damages." The defendant demurred to the complaint, and to each count thereof ; and his demurrer being overruled, he then pleaded " the general issue, with leave to give any special matter in evidence." Issue was joined on this plea, and a trial was had at the same term.

On the trial, as the bill of exceptions states, the plaintiffs offered in evidence the contract on which the suit was founded, which was dated " Wetumpka, June 3, 1863," was signed by said Nathan and D. W. Bozeman, and was in these words : "On the first day of January, 1865, we promise to deliver to Howell Rose or order, in the city of Wetumpka, forty-eight thousand eight hundred and forty-six pounds of ginned cotton, packed in bales, and in good merchantable order, and the quality to be middlings." " The plaintiffs proved the execution of said contract by said Nathan and D. W. Bozeman, and that the consideration of said contract was the loan and delivery by said Howell Rose to said defendant, Nathan Bozeman, on the 3d day of June, 1863, of an equal amount of ginned cotton, of similar quality, and packed in bales ; and proved the value of cotton of that class to have been worth in gold, in the city of Wetumpka, in the months of October and December, 1865, from forty to fifty cents per pound in 'greenbacks,' and from thirty to thirty-two cents in gold in said last named months of 1865. There was evidence, also, that cotton of that class was worth about two cents per pound in gold on the first day of January, 1865. The

court charged the jury, that the measure of damages was the market value of the specified quantity and quality of the cotton stipulated to be delivered, in the city of Wetumpka, on the first day of January, 1865, with interest thereon from that day until the present time. To this charge, on account of which the plaintiffs took a nonsuit, they duly excepted;" and they now assign said charge as error.

ELMORE, KEYES & MORRISSETT, for appellants.
GOLDTHWAITE, RICE & SEMPLE, .contra.

JUDGE, J.—The question for decision in the present case is, what is the correct rule of damages, in a suit by the vendee against the vendor, for a breach of contract in failing to deliver, at the time specified in the contract, articles of personal property, for which payment has been made in advance. It is contended by counsel for appellants, that the analogy between the action of trover and an action of assumpsit founded upon the breach of such a contract, is so complete, that the rule of damages should be the same in both actions; and that to prescribe a rule of damages for the one different from that prescribed for the other, would be positive inconsistency.

Let us inquire into the rule, as established in this State, in the action of trover. The true measure of damages, in such action, "where the thing converted has a fixed value, is that value at the time of the conversion; and the jury *may* give interest upon it. If the value is fluctuating, the jury *may* take the highest value at any time between the conversion and the trial."—*Strong v. Strong*, 6 Ala. 345; *Tatum v. Manning*, 9 Ala. 149; *Lee v. Mathews*, 10 Ala. 682; *Ewing v. Blount*, 20 Ala. 649; *Jenkins v. McConnico*, 26 Ala. 213. But there are exceptions to this general rule, and cases to which it has no application. "In ascertaining the damages, in many actions of trover, it is allowable to mitigate them, by investigating and determining what (for want of a phrase of greater accuracy) is called *the equity of the case.*"—*Williams v. Crum*, 27 Ala. 468.

44

We have no disposition to disturb the law as it has been thus long settled, and repeatedly acted upon, in this State, relating to the measure of damages in the action of trover. But let us see how it would operate in its application to an action *ex contractu*, of the character of the one before us. In an action of this character, we understand it to be settled beyond controversy, that neither *exemplary* damages, nor such as are *remote* and *consequential*, or purely *speculative*, are recoverable; but only such as are the *natural* and *proximate* consequence of the act complained of. The plaintiff is limited to a just compensation for his actual loss—is entitled to an indemnity, and nothing more; and, consequently, is never to be placed in a better situation than that in which he would have been, had the contract been fulfilled.—*Suydam v. Jenkins*, 3 Sand. Sup. Ct. Rep. 637. And furthermore, the compensation to which he is entitled is to be awarded as damages according to *established rules*, and its amount " is a question of law, not governed by any arbitrary assessment, nor, on the other hand, left to the fluctuating discretion of either judge or jury."—Sedgwick on Damages, m. p. 29.

Is it not obvious, that the rules which obtain in the action of trover, would, if applied to the action of assumpsit, when founded upon the breach of an executory contract, be subversive of the rules above announced, as applicable to actions of the latter class? If thus applied, the amount of damages would be left to the "*fluctuating discretion of the jury;*" and in the exercise of their discretion, damages purely speculative, or plainly vindictive, might be assessed. They would be conjectural and speculative, if the highest value at any time between the breach and the time of trial should be selected as the measure, and it were barely possible that the plaintiff would have retained the possession had the article been delivered, and would have realized said intermediate higher value; and they would be vindictive, should it appear certain that no such benefit could have resulted to the plaintiff.—*Suydam v. Jenkins, supra.*

Take for example the case before us. By the terms of the contract, the cotton was to be delivered in the city of Wetumpka, on the first day of January, 1865. Its market

value, at that time and place, was about two cents per pound in gold. In the months of October and December, of the same year, its market value at the place of delivery was from thirty to thirty-two cents per pound in gold, and from forty to fifty cents per pound in greenbacks; and this, so far as the record discloses, was all the evidence introduced relating to the value. Now, how can it be said that the loss sustained by the testator of appellants, from the non-delivery of cotton on the first day of *January*, 1865, was the value of the cotton in *October* and *December* of the same year, when it can not be known that he would have *kept it* until one of the last named months, and would then have *sold it* for the advanced price? Can it be said to be more than possible that he would have done this? And if barely possible, would not the selection of the price in the months named as the measure of damages, be awarding damages purely conjectural and speculative? It is certain, that the damages awarded by such a rule would not be the "*natural* and *proximate*" consequence of the breach complained of.

We are unwilling to extend the rules established in the action of trover, as to damages, to an action of *assumpsit* like the one we are considering; and we can perceive no logical necessity for such a result. It is true there is an analogy between the two actions, in so far as the personal property which is the subject of litigation in each has been withheld from the party rightfully entitled to the possession of it; but in all other respects they are quite dissimilar, resting as they do upon totally different grounds, asserting totally different rights, seeking to redress totally different grievances, and requiring totally different evidence to support them.

In an action founded upon the breach of a contract for the failure to deliver articles of personal property at the time specified in the contract, the general rule is, that the measure of damages is the value of the article at the time it is to be delivered. But there has been conflict of opinion, and contrariety of decision, as to what should be the rule when payment for the article has been made in advance. We shall not attempt a review of even the princi-

. cases involving the latter question. A collocation and view of them may be found in Sedgwick on the Measure f Damages, marginal pages 261 to 276, inclusive.

Chancellor Kent, in his Commentaries, (vol. 2, p. 480,) says : " The general rule is well settled, that in a suit by vendee for a breach of contract on the part of the vendor, for not delivering an article sold, the measure of damages is the price of the article at the time of the breach." In commenting upon this extract, Mr. Sedgwick, in his work before cited, (page 274,) says : " The learned chancellor appears here to overlook the distinction, resulting, as we have seen, from the payment of the price beforehand, which runs through these cases, and which is entirely analogous to the rule in trover ; that the value of the chattel, not at the moment of the conversion, but its highest value up to the time of trial, is the rule of damages." Chancellor Kent, in a note to the 6th edition of his Commentaries, replies to these remarks of Mr. Sedgwick as follows : " The learned author is mistaken, in supposing I had overlooked that distinction. These commentaries are not calculated to embody all the nice, or arbitrary, or fanciful distinctions that are to be met with in the reports. I do not regard the distinction alluded to as well founded or supported. It is disregarded, or rejected, by some of the best authorities cited. The true rule of damages is the value of the article at the time of the breach, or when it should have been delivered. Mr. Sedgwick seems himself to come to that conclusion amid the contrariety of opinion and cases which he cites." Chancellor Kent is correct in his statement as to the conclusion attained by Mr. Sedgwick upon the question, (Sedg. Meas. Dam., 3d edition, m. pp. 273, 274, 275,) though, as the latter says, (p. 271,) he is admonished, in the perplexing conflict of opinion, to refrain from any dogmatical declaration of the existing rule.

But the counsel for appellants invoke the name of Chief Justice Marshall as an authority in opposition to the rule as declared by Chancellor Kent ; and the case of *Shephard v. Hampton*, 3 Wheaton, 200, is cited in support of the position. The precise question we are considering was not involved in that case. It is true, Chief Justice Marshall, in

his opinion delivered in the case, said : " For myself, only, I can say that I would' not think the rule would apply to a case where advances of money had been made by the purchaser under the contract. But I am not aware what would be the opinion of the court in such a case." This, as was correctly said by Rogers, J., in *Smethurst v. Woolsten*, (5 Watts & Sergeant, 106,) " though doubtless entitled to great respect, is but a mere *dictum* of the eminent jurist."

After a careful consideration of the question, we feel constrained by reason, as well as by what we conceive to be the weight of authority, to adopt the following as the rule of damages in cases like the present—viz., the value of the article at the time of the breach, with interest, for delay ; unless it be shown that the article was to be delivered for some specific object known to both parties at the time, and that thus a loss, within the contemplation of both parties, has been sustained. We cite the following adjudications of this court, as bearing upon the question, and in effect, as we conceive, recognizing the rule to be as we have stated it.—*Pinkston v. Huie*, 9 Ala. 252 ; *Willis v. Dudley*, 10 Ala. 933 ; *Milton v. Rowland*, 11 Ala. 132 ; *Oswald v. Godbold*, 20 Ala. Rep. 811 ; *Gibson v. Marquis and Wife*, 29 Ala. 668 ; *Younge v. Holley*, 27 Ala. 203 ; *Bozeman v. Rose*, 40 Ala. 212 ; *McGehee v. Posey*, at the present term.

We also quote with approval, what Mr. Sedgwick says, in commenting upon the rule as we have stated it : " The fact of payment in advance throws no light on the injury sustained by the purchaser ; nor does it at all increase the probability that he would have retained the article till the rise of price. The value of the article at the time of breach, with interest for delay, and subject to the above exception, [the exception we have named,] seems to me as near an approach to the actual loss sustained as can be effected, without embarking upon a vague search after facts impossible, in most cases, to be proved with any degree of satisfaction. And if this rule be sound, it applies as well to cases where the property has fallen, as to those where it

has risen. The purchaser claims his advance; but, if he gets the value ôf the article at the time of the breach, the contract is performed; and if this sum be less than his advance, his loss is ascribable purely to his own bargain. It may undoubtedly be urged, and with force, that the contract being violated by the defendant, the retention of any part of the plaintiff's money is against conscience. I have already, however, said that, in actions of contract, the only object of the tribunal must be to carry into effect the agreement of the parties, as far as possible, and that the motives of the defaulter are not to be taken into view. If this be correct, then certainly it removes the last objection to the adoption of the general rule, that the value at the time of the breach, with interest for delay, is, with the exception of the defendant's liability to make remuneration for loss resulting from facts within the knowledge and in the contemplation of both parties at the time of the contract, to furnish the measure of damages."

We conclude by remarking, that no general rule of damages can, perhaps, be established for application to all cases like the present, that will be entirely free from objection, or that will not, at times, work injustice; but, when injustice, in a particular case, results from the observance by the court of a general rule of law, it is obviously better for the public weal, and a far less evil, that such injustice should be patiently borne by the individual party, than that the court should, for the purpose of relieving him, usurp the power of breaking the settled law, which defines the rights of all.

Judgment affirmed.