# Bozeman v. Rose's Executors.

### Bill in Equity for Injunction against Mortgage Sale.

1. *Measure of damages for breach of contract to deliver specific articles at particular time and place.* — For the breach of a contract to deliver specific articles at a time and place stipulated, the measure of damages is the value of the articles at that particular time and place; and this rule, which is equally applicable at law and in equity, is not affected by the subsequent ability of the party in default to make delivery, in whole or in part, and his refusal to do so, although the other party was willing to accept it.

2. *Value of cotton in January,* 1865; *how ascertained.* — In ascertaining the value of cotton at Wetumpka, Alabama, on the 1st January, 1865, evidence of the relative value of United States and Confederate currency at that particular time and place is not inadmissible; but it is not correct to ascertain the value of the cotton in Confederate currency, and reduce that to its equivalent in gold or United States currency.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed by Nathan Bozeman against the executors of the last will and testament of Howell Rose,

deceased, and sought to restrain them from selling certain lands, under a power of sale contained in a mortgage, dated the 30th June, 1863, which was given to secure the payment of the following obligation : —

"Wetumpka, June 3, 1863. On the first day of January, 1865, we promise to deliver to Howell Rose, or order, in the city of Wetumpka, forty-eight thousand eight hundred and forty-six pounds of ginned cotton, packed in bales, and in good merchantable order, and the quality to be middling.

(Signed)      " NATHAN BOZEMAN.<br>" D. W. BOZEMAN."

The condition of the mortgage was in these words : " But, if said obligation shall not be paid, liquidated, and extinguished, in that case the said Howell Rose is hereby authorized and empowered to take possession of the aforegranted premises, and, after advertising the same for sale in some newspaper published in the city of Montgomery, for thirty days, proceed to sell the same to the highest bidder, at the artesian basin in the city of Montgomery ; and after paying off said obligation, and the expenses of such sale, if there be any surplus, pay over the same to the said Nathan Bozeman, his heirs, and assigns." The bill sought an injunction against the sale, on the ground that the executors had no authority to sell under the mortgage without the decree of a court of chancery, ascertaining the amount due under the obligation, and that a sale under the mortgage would cast a cloud on the complainant's title.

The defendants answered the bill, and incorporated in their answer a demurrer for want of equity, because the complainant showed that he was guilty of a voluntary breach of the contract, and because he did not offer to pay the amount due to the defendants on account of the breach. The only controverted question in the case was as to the measure of damages which the defendants were entitled to recover on account of the complainant's failure to deliver the cotton as stipulated in his obligation. It appeared that the complainant had at his gin-house near Wetumpka, on the 1st January, 1865, between sixty and seventy bales of cotton, which Rose was willing to accept in part satisfaction of the obligation, and which the complainant promised to deliver, but afterwards refused to do so, and sold it in August, 1865, at thirty cents per pound. " It was admitted, also, that the value of cotton, of the quality mentioned in the obligation, at Wetumpka, on the 1st January, 1865, was not more than two and a half cents per pound in gold ; and that the value of gold, as compared with ' greenbacks,' was as one hundred to one hundred and fifty — that is, $100 in gold would buy $150 in ' greenbacks,' or United States

treasury-notes ; and that there was at that time no market at
Wetumpka for cotton in 'greenbacks,' Confederate States
treasury-notes being the only kind of money then in use as a
circulating medium in Alabama; and that the meaning of the
above estimate, as to the value of cotton in gold, is that it
could be bought per pound for as much Confederate money as
would buy two and a half cents in gold."

On final hearing, on pleadings and proof, including the ad-
mission of counsel as to the value of the cotton, the chancellor
held that the complainant was accountable for the sixty bales
of cotton which he had on hand on the 1st January, 1865, at
thirty cents per pound, its agreed value on the 1st August,
1865, amounting to $14,580, and for the residue at its agreed
value in gold on said 1st January, 1865, amounting to $942.29 ;
and he perpetuated the injunction, on the condition that the
complainant pay the aggregate of these sums, $15,522.29,
within thirty days. From this decree the complainant ap-
peals, and here assigns it.as error.

SEMPLE & COCKE, for appellant. — The true measure of
damages for the complainant's breach of contract in this case
has been settled by this court in two former decisions between
these same parties, which are reported in 40 Ala. 212, and 41
Ala. 678. That the same rule must apply in equity, see Par-
sons on Contracts, 4th ed. vol. 2, p. 6 ; Story on Contracts,
§ 633 ; 3 Bla. Com. 431.

WILLIAMSON & FITZPATRICK, contra. — The rule for the
measure of damages between these parties, as laid down in the
case reported in 41 Ala. 678, is in conflict with respectable au-
thorities, which are collected in Sedgwick on Damages, 259–79 ;
and it should not be extended to cases in which it would come
in conflict with well established maxims and principles. Here,
the party who has wilfully violated his contract, asks a court
of equity to relieve him from a forfeiture resulting from that
violation. It is an elementary principle in equity, that he who
asks relief must do what is equitable. 1 Dan. Ch. Pr. 441–2 ;
Martin v. Tenison, 15 Ala. 738. Any other rule than that
adopted by the chancellor would encourage the violation of
contracts, and enable a party to take advantage of his own
wrong. Fanning v. Dunham, 5 John. Ch. 142 ; Fulton Bank
v. Beach, 1 Paige, 429 ; Davis v. Hone, 2 Sch. & Lef. 348 ;
Willard v. Tayloe, 8 Wallace, 557.

B. F. SAFFOLD, J. — The issue made by the parties is
simply the measure of damages for the breach of the contract
by the complainant in not delivering the cotton at the time

appointed. The mortgage recites that, on default of the obligors in delivering the cotton, the mortgagee may sell the premises, and "after *paying off said obligation,* and the expenses of such sale," shall return any surplus to the mortgagor. It was proved that the complainant had about sixty bales, or somewhat more than one half, of the cotton on the 1st of January, 1865, which he retained until August, 1865, and might, at any time during the interval, have delivered acceptably to Rose. He did not deliver any, but sold what he had for about thirty cents per pound in August. The proof tended to show that cotton was worth in Wetumpka, on the 1st of January, 1865, about two and a half cents per pound in gold. But the manner of arriving at this valuation was to estimate the value of each in Confederate money. The chancellor decreed, that the complainant should pay the value of the sixty bales at the date of his sale, which, by agreement, was fixed at thirty cents per pound. He was charged for the remainder three cents a pound, its price in United States currency by comparison with Confederate money, on the day it should have been delivered. The appellant insists that the latter rule is the measure of his accountability for the sixty bales.

It seems inequitable that a debtor should enjoy the profit gained by his deliberate breach of contract, with the means of partial compliance, at least, in his hands, when his creditor is willing to accept such performance as he can make. But even equity must be governed by rules of larger universality than application to a single case. A person, under obligation to deliver specific articles at a particular time and place, having made up his mind not to do so, will certainly in some way protect himself against increased damage from retaining them in his own possession. The principle determining his liability must have the element of mutuality in its largest proportion. In torts, the wrong-doer is discriminated against, because his act is a continuing wrong. But, in contracts, the creditor would often be unwilling to accept performance after the time. He is compensated, as far as the law can do so under a general rule, by giving him the value of the articles at the time when they should have been delivered, and interest thereon. This doctrine is established by repeated decisions of this court. *McGehee* v. *Posey.* 42 Ala. 330 ; *Rose's Ex'rs* v. *Bozeman,* 41 Ala. 678 ; *Gibson* v. *Marquis & Wife,* 29 Ala. 668 ; *Oswald* v. *Godbold,* 20 Ala. 811.

The manner of ascertaining the value of the cotton on the 1st of January, 1865, adopted in this case, is incorrect. Evidence of the relative values of United States and Confederate currency is not inadmissible to aid in the determination. But it is well known that during the war such articles as were pro-

[New York and Alabama Contracting Co. *v.* Meyer.]

duced in the Confederate States bore no just proportion of price to those imported into them, in either currency. For instance, medicines, being brought from without, sold for as much Confederate money as would buy in gold their price outside of the Confederacy, while cotton brought a greater price within the Federal lines, in Federal currency, than it did within the Confederate lines, in Confederate currency. In *Faw* v. *Marsteller* (2 Cranch, 10), Judge Marshall said: " The jury ought not to be governed by the particular difficulty of obtaining gold and silver coin at the time, but their conduct ought to be regulated by the real value of the property, *if a solid equivalent for specie* had been made receivable in lieu thereof."

In computing the damages, no greater valuation should be placed on a quantity of cotton equal to that which the complainant possessed and might have delivered, than on the remainder. The creditor was not obliged to accept a partial performance, and the ability of the debtor to pay did not increase the breach of his contract. The court should find the real value of the property at the date when it ought to have been delivered, without being governed by the particular difficulty of obtaining gold and silver coin or United States currency. The Federal currency would have satisfied the demand, but it was prohibited from circulation by laws which can have no recognition in the present courts. This consideration alone shows the inequality and error of the mode of finding the value practised in this case.

The decree is reversed, and the cause remanded.