# The Trustees of Howard College *v.* Turner.

*Assumpsit for Breach of Scholarship issued by College.*

71 | 429
99 | 232
71 | 429
110 | 536

1. *Payment of debt to trustee in Confederate money; effect of.*—The principle is firmly settled by the numerous decisions of this court, that whatever liability trustees may have incurred to *cestuis que trust* by accepting Confederate money, during the late war, in payment of debts due to the trust estate, "as to the debtor, the debt is extinguished as completely as if the payment had been made in gold and silver."

2. *Same.*—Where one subscribed to the endowment fund of a college, a corporation under the laws of this State, prior to the late war, and gave his promissory notes to the amount of his subscription, and afterwards, and during the war, paid the notes in Confederate treasury notes, and received from the trustees, in pursuance of a prior agreement and the by-laws of the corporation, a certificate of permanent scholarship in the college, entitling him to the tuition of one pupil *in perpetuo*, the receipt of the Confederate money by the trustees operated a payment of the notes, and entitled the subscriber to his certificate; and hence, the fact that such payment was made in Confederate money is no defense to an action brought by the holder of the certificate of subscription against the corporation for a breach thereof.

3. *Certificate of permanent scholarship in a college; its effect and obligation.*—A certificate of permanent scholarship, issued by the Trustees of Howard College, a corporation, under the provisions of its charter and by-laws, by which the holder, in consideration of money paid, became entitled to the tuition of one pupil *in perpetuo*, is a valid and binding contract, conferring upon the holder the right to send any fit person within his option to the college as a pupil, to be educated, subject to the usual

[The Trustees of Howard College v. Turner.]

regulations of the institution, free of tuition, and imposing upon the corporation a corresponding legal obligation, a breach of which is a ground of action.

4. *Same; what constitutes a breach thereof.*—The refusal of the corporation to permit the holder of the certificate of permanent scholarship the benefit thereof, by denying to him the right to appoint a pupil to attend the institution, free of tuition *in perpetuo*, is a breach of the contract evidenced by the certificate, which the holder is authorized to treat as a total breach, and for which full and final damages may be recovered in one action.

5. *Same; measure of damages in action for breach of.*—In *assumpsit* by the holder of such certificate against the corporation for a breach of the contract evidenced by the certificate, the measure of damages is the value of the scholarship, with lawful interest.

6. *Same.*—It not being shown in such case that the scholarship had any marketable value, and in the absence of evidence tending to show that it was of less value at the commencement of the suit than at the date of purchase,—*held*, that *prima facie*, at least, the value of the scholarship was the price agreed to be paid for it.

APPEAL from Perry Circuit Court.

Tried before Hon. JOHN MOORE.

This action was commenced on 22d August, 1876, by Matthew Turner against The Trustees of Howard College, a corporation, for the recovery of damages for the alleged breach of an agreement evidenced by a certificate of permanent scholarship issued by said corporation.

The Circuit Court charged the jury *ex mero motu*, among other things, in substance, that if they found from the evidence and the law as given to them by the court, that the plaintiff was entitled to recover, then he was entitled to recover damages from the time the defendant refused to receive the plaintiff's grandson [the pupil shown by the evidence to have been appointed by the plaintiff under the scholarship, and whom the defendant refused to receive as a pupil thereunder] as a pupil in said college on said scholarship to the time of trial; and that in determining the amount of damages he was entitled to recover, they could look at, and consider the annual value of the tuition in said college from 1874 [the time when the evidence showed the tuition was refused under the scholarship] to the present time. To both propositions contained in this charge the defendant separately and duly excepted. The evidence showed that the tuition was at the rate of $100 for the scholastic year 1874–5; $90 for that of 1875–6; and $80 for each year thereafter. The trial resulted in a verdict and judgment for the plaintiff for $640, from which the defendant appealed. The other facts, and questions raised in the court below, necessary to an understanding of the opinion, are sufficiently stated therein.

WM. M. BROOKS, JOHN F. VARY and WATTS & SONS, for appellant.

[The Trustees of Howard College v. Turner.]

PETTUS & DAWSON, *contra.*

SOMERVILLE, J.—This suit is one for damages, based up-on the alleged breach of an agreement made between the de-fendant corporation, the Trustees of Howard College, and the appellee, who was plaintiff in the lower court. The instru-ment, which is the basis of the action, is set out *in extenso* in the complaint. It is entitled a "Certificate of Permanent Scholarship," bearing date January the 23d, 1863, and purports to be executed by corporate authority, in the name of the treas-urer of the institution, who is shown to have possessed author-ity to issue such certificates, under the by-laws of the board of trustees establishing the plan of endowment. The recital of the instrument is, that the plaintiff, Matthew Turner, "in con-sideration of five hundred dollars, by him paid to said col-lege," according to the "terms of the plan of endowment, is entitled to a permanent scholarship, as therein, in such cases, provided." This plan, as embodied in the certificate, provides that any person, "paying five hundred dollars into the treasury of Howard College, shall be entitled to a *permanent scholarship* in this college, that is, to *the tuition of one pupil* IN PERPETUO." Such certificate is made "transferable, as other property, at the pleasure of the holder." It is shown, further, that the plaintiff had subscribed to the endowment fund of the college, in Decem-ber, 1859, executing his five promissory notes, each payable to the Trustees of Howard College, in the sum of one hundred dollars.

These notes were taken up and discharged, three of the five, by the payment of the full amount due on them, in *Confeder-ate money*, upon the 23d of January, 1863, when the certificate of scholarship was dated and delivered.

It is contended, in the first place, that the defendant corpo-ration had no authority to receive payment of the notes in Con-federate money or currency. Being an eleemosynary institution, it is insisted that the trustees and managers held the en-dowment fund and other corporate property in trust for the various subscribers; and that the receipt of such an illegal cur-rency was a breach of trust, and did not operate to discharge the debt due by plaintiff, nor entitle him to the ownership of the certificate of scholarship.

It is true that the five promissory notes in question were payable, on their face, in the lawful currency of the United States. They were executed before the inauguration of the war between the States, and prior to the existence of the currency known as Confederate money; and their payment could have been exacted in lawful dollars, such as constituted a legal tender for the payment of debts. — *Confederate Note Case*, 19 Wall. 548;

*Riddle v. Hill*, 51 Ala. 224. But this right was waived by the receipt of a depreciated currency, which was at the time the only currency of the country, passing as money, and circulating of necessity as cash in all the transactions of daily business. The principle is firmly settled by the numerous decisions of this court, that whatever liability trustees may have incurred to *cestuis que trust* by accepting such a currency in payment of debts due the trust estate, "as to the debtor, the debt is extinguished as completely as if payment had been made in gold and silver."—*Waring v. Lewis*, 53 Ala. 615; *High v. Snedicor*, 57 Ala. 403; *Parks v. Coffey*, 52 Ala. 32; *Hill, Adm'r v. Erwin*, 60 Ala. 341; *Confederate Note Case*, 19 Wall. 548, *supra; Wilmington, &c. Railroad Co. v. King, Ex'r*, 91 U. S. 3; *Thorington v. Smith*, 8 Wall. 1.

There is nothing, then, in the argument, that the obligations given by the plaintiff, as a subscription to the endowment fund of the college, were permitted to be discharged in Confederate States treasury notes. The case is to be considered as if the question of Confederate money was entirely eliminated from the transaction.

We can not entertain the slightest doubt that the agreement imported by the certificate in question is a *contract*, for the breach of which an action of *assumpsit* for damages will lie. A contract, in legal contemplation, as said by Mr. Parsons, is "an agreement between two or more parties, for the doing or not doing of some particular thing."—1 Parsons on Contr. (6th Ed.) 6. Of course such an agreement must be based on sufficient consideration; and this is made a part of the definition by many elementary writers.—2 Black. Com. 446. It is defined by Mr. Wharton to be "an interchange by agreement of legal rights," involving the assent of two or more persons.—1 Whar. on Contr. § 1. Every element of these, and similar definitions enters into the agreement under consideration in the present case. The plaintiff promised to pay defendant the sum of five hundred dollars, as the consideration which was to move from him; and this obligation he has, in the eye of the law, fully discharged. The promise of the defendant, though implied, rather than express, is entirely unambiguous. The plaintiff is declared to be "*entitled to*" a permanent scholarship in the college," which is defined to be "the tuition of one pupil *in perpetuo*,"—that is, the right to send any fit person within his option to the college, as a pupil, to be educated, subject to the usual regulations of the institution, *free of tuition*. It would be doing violence to the rules of both language and law to say that the plaintiff was "entitled to" to this right, which he had thus purchased, and yet, that the defendant was at liberty to deny and obstruct its exercise, to utter abrogation, without le-

[The Trustees of Howard College v. Turner.]

gal liability. The plain meaning of the language is, that the defendant corporation, in consideration of the five hundred dollars received, *promises* to secure to the plaintiff the benefit and enjoyment of this scholarship, whether he might transfer it for profit, or might charitably elect to dispense it as a benefaction. It is immaterial that the *motive* of the plaintiff in making his subscription may have been to advance the cause of education. There is a manifest distinction, in matters of contract, between a motive which induced entering into it, and the actual consideration of the contract.—*Philpot v. Gruninger*, 14 Wall. 570. One subscriber to the stock of a projected railroad may be actuated solely by a selfish desire to enhance the price of property he may own adjacent to the line of the road. Another may be moved only by a laudable desire to promote the public welfare. The motive in neither case would change the legal rights or obligations of the subscribers as stockholders. The consideration proper of a contract is the price voluntarily paid for a promisor's undertaking.

The certificate of scholarship must be construed, according to every sound and just rule of legal construction, to impose on the appellants in their corporate capacity, a legal duty, the breach of which is a ground of action. It may be regarded, we think, as an incontrovertible proposition, everywhere recognized, that every violation of a legal right, in contemplation of law, causes a legal injury. "If the infraction is established, the conclusion of damage inevitably follows. This deduction is made," as observed by a recent author, "though it actually appears, and is recognized in the case, that there was in fact no injury, and even a benefit conferred."—1 Sutherland on Dam. 2. "Wherever," says Mr. Sedgwick in his treatise on Damages, "the breach of an agreement, or the invasion of a right is established, the English law infers some damage to the plaintiff."—1 Sedgw. on Dam. (7th Ed.), 71 [47.] Every injury," said Lord Holt, in *Ashby v. White*, 1 Salk. 19, "imports a damage."

The only point of difficulty presented to our mind in the case is the proper measure of damages. The least damages that can be allowed for a clear breach of legal duty are nominal damages —a principle too well settled for discussion.—*Adams v. Robinson*, 65 Ala. 586; Sedgw. on Dam. (7th Ed.), 71 [47.] The rule, as generally expressed, is familar, that the damages to be recovered must always be the natural and proximate consequence of the act complained of.—2 Greenl. Ev. § 256. This excludes the idea of such damages as are merely consequential, remote or speculative, and limits the plaintiff's recovery, in actions *ex contractu*, to a just compensation for the actual loss which he has sustained by the defendant's failure to comply with his ob-

ligation or promise.—*Rose's Ex'r v. Bozeman*, 41 Ala. 678.

The question recurs, what actual damages has the plaintiff suffered in legal contemplation? The breach complained of is, that the defendant refused to permit the plaintiff to enjoy the benefit of the permanent scholarship which he had purchased, by denying to him the right to appoint a pupil to attend the institution, free of tuition, *in perpetuo*. The gravamen of the averment is the refusal of the defendant to recognize the binding obligation of the contract for the sale of the "scholarship." This refusal the plaintiff was authorized to treat as a *total breach*, for which full and final damages could be recovered. A just analogy in principle is found in that class of contracts in which an obligor agrees to provide for and support an obligee during the latter's natural life. A refusal to comply, at any given time, has been uniformly construed into an attempt on defendant's part to abrogate the whole agreement, which is a total breach.—*Schell v. Plumb*, 55 N. Y. 592; *Fales v. Hemenway*, 64 Me. 373; 1 Sedg. on Dam. (7th Ed.) 480 [226]; *Colvin v. Corwin*, 15 Wend. (N. Y.) 557.

It is no objection that, in cases of this nature, the plaintiff could not in person have reaped the benefit of the purchased privilege either himself or for the enjoyment of his immediate family. Contracts in the interest of education and of charity, being highly beneficial to the State, should be greatly favored by the law. The power to appoint a benefit to another is a valuable right, the legal value of which can not be different from the power to designate one's self as the beneficiary of the right. If one, for example, deposit a sum of money with a banking institution, under the agreement that the interest shall be paid to such charitable uses as the depositor or his executors shall designate, the right, we apprehend, would be none the less valuable, because others, and not the owner of the fund, were to be the beneficiaries of his bounty. The same would be true if one should pay an agreed sum to the trustees of a hospital for lunatics, for the privilege of designating a pauper insane person, as a patient to be boarded and cared for by the managers of such institution from time to time. A refusal of the obligors in these cases to comply with their agreement would clearly be a breach of duty towards the obligees, from whom the consideration moved, and not towards the object of the charity. The fact that these cases constitute trusts, for the enforcement of which a court of equity will, in certain contingencies, take cognizance, does not prohibit the trustees from being sued at law for damages, for the non-performance of engagements which they have expressly assumed.—2 Perry on Trusts, § 842.

The measure of damages suffered by the plaintiff in the pres-

[The Trustees of Howard College v. Turner.]

ent case is, in our judgment, the value of the scholarship, with lawful interest, of the enjoyment of which he has been deprived by the wrongful act of the defendant.   We admit the inherent difficulty of arriving at this valuation, but this is no proper objection, if we can find a safe rule of estimate, based upon the just analogies of the law.   Where a purchaser of personal property, who has paid the price in advance, brings an action for the breach of a special contract to deliver, the measure of damages is the value of the property, or article at the time and place of delivery.—*Rose's Ex'r v. Bozeman*, 41 Ala. 678; *McGehee v. Posey*, 42 Ala. 330; Sedgw. on Dam. (7th Ed.) 580–81 [274–5].   In actions of covenant for breach of warranty in the sale of lands, the prevailing rule for the measure of damages is the consideration-money and interest.   2 Greenl. Ev. § 264, *note* (a).   In the case of stocks, and perhaps other like property of fluctuating value, which have been purchased and paid for, there is a growing tendency to allow the highest value up to the time of trial, on failure to deliver.—Field on Dam. §§ 256–7.   It is not shown that the scholarship in question had any marketable value.   The right to appoint under it may never have been exercised.   In one sense, it may have been worth more to one person than to another.   One owner may have used it every year, and another may never have used it at all.   In view of these intrinsic difficulties, we are rather inclined to adopt the view that presumptively its true value is the contract price, which the parties themselves have placed upon it in the contract of sale and purchase.—*Houston, &c. R. R. Co. v. Burke* 55 Tex. 323; S. C. 40 Amer. Rep. 808.   This price was five hundred dollars in lawful money—a sum for which the defendant was accustomed to sell permanent scholarships, and which purchasers commonly agreed to give.   It is safe to say that *prima facie*, at least, the value of the right was the price agreed to be paid for it, in the absence of evidence showing the contrary.   There is no evidence in the record tending to show the right to have been of less value at the time of suit brought, than at the date of purchase.   The college is shown to be still in successful operation, open for the care and education of all applicants.

It would, perhaps, better comport with the ends of justice, if we could arrive at the conclusion that the amount of damages could be gauged, to some extent, by the value of the consideration actually paid, the greater portion of which was, as above stated, Confederate money or treasury notes.   But we know of no sound principle on which this can be done.   The contract of the parties, having been made in the year 1859, had in view lawful money of the United States.   The contract price then, which was in the mind of the contracting parties, was the law-

ful currency of the country. The measure of damages is not the consideration, which is paid by way of compromise or concession, but the value of the property to be delivered, or right to be enjoyed, because "this is the remuneration fixed by agreement."—1 Sedgw. on Dam. 203. Mere inadequacy of consideration is no objection to a plaintiff's right of recovery upon a contract. The valuation placed by the parties upon the scholarship was evidently in good money, the right to the payment of which was waived and lost by the defendant's voluntary acceptance of a depreciated currency.

There are some analogies strongly favoring the measure of damages adopted by the Circuit Court, which seems to have been the annual value of tuition from the date of the the breach to the day of the trial. The objections to it, however, are its fluctuating uncertainty, increasing in amount with the protraction of the litigation, and its speculative nature in assuming that the plaintiff would always be punctually ready to claim the benefit of his scholarship, with every and each succeeding year. The charge of the court, in this particular, was more favorable to the appellant than the law, in our view, authorized.

We discover no error in the rulings of the court, which could have been prejudicial to appellant, and the judgment must be affirmed.